GROZA–VANCE, Appellee,

v.

VANCE et al., Appellees;  Hay et al., Appellants.

[Cite as *Groza–Vance v. Vance,* 162 Ohio App.3d 510, 2005-Ohio-3815.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 04AP–1216.

Decided July 28, 2005.

512

514

Kemp, Schaeffer, Rowe & Lardiere Co., L.P.A., Harold R. Kemp, and Jacqueline L. Kemp, for appellee Rosemary Groza–Vance.

Gary J. Gottfried Co., L.P.A., and Gary J. Gottfried, for appellants.

FRENCH, Judge.

{¶ 1} Defendants-appellants, Martha Hay and Elmer Hay, appeal from a judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations, granting the motion of plaintiff-appellee, Rosemary Groza–Vance ("appellee"), for the imposition of a constructive trust, denying appellants' motion for relief from judgment pursuant to Civ.R. 60(B), and granting in part appellee's request for attorney fees.

{¶ 2} Appellee and defendant-appellee, Lois S. Vance ("Vance"), were married on July 11, 1981, and divorced on May 8, 1984. Appellee was Vance's third wife. No children were born as issue of the marriage.

{¶ 3} At the time of his divorce from appellee, Vance was the president and sole shareholder of Jimmy's, Inc., a named defendant in the divorce proceedings. At the time of the divorce, Jimmy's, Inc., was the owner of real property located in Port St. Lucie, Florida. In an agreed judgment entry/decree of divorce filed May 8, 1984, the trial court ordered Vance to execute a will bequeathing the Florida property, free and clear of all encumbrances, to appellee. The divorce decree further provided that Vance "shall take no action during his lifetime to alter or change this provision of his Will." On or about May 9, 1984, Vance executed a will in compliance with the divorce decree. Appellee recorded the divorce decree in the office of the St. Lucie County, Florida, Clerk of Court.

{¶ 4} Vance lived with appellants from October 1999 until the summer of 2000, when he was hospitalized and eventually moved into a nursing home. Martha is Vance's daughter from his second marriage, and Elmer is Martha's husband.

{¶ 5} On February 28, 2000, Vance executed a trust agreement and transferred numerous parcels of real estate to the trust created thereby. Vance designated himself and Elmer as cotrustees. On or about April 11, 2000, Vance, as president of Jimmy's, Inc., executed a general warranty deed conveying the Florida property to Martha. Vance died on or about November 28, 2000. As a result of the trust agreement and Vance's transfer of the Florida property to Martha, Vance had no assets at the time of his death. Thus, there was no probate estate, and title to the Florida property did not pass to appellee pursuant to Vance's will.

{¶ 6} On May 25, 2001, appellee filed a motion for the imposition of a constructive trust. Appellee argued that, through execution of the trust agreement and conveyance of the Florida property to Martha, Vance intentionally violated the divorce decree. The trial court joined Martha, Elmer, Jimmy's, Inc., and the Lou S. Vance Revocable Trust as defendants on June 4, 2001. Also on June 4, 2001, the trial court issued restraining orders against Martha, Elmer, Jimmy's, Inc., and the Lou S. Vance Revocable Trust, ordering that they were "restrained and enjoined from disposing, transferring, conveying, or reducing the existence or value of any assets or income relating in any manner to Lois S. Vance, directly or indirectly." On July 16, 2003, appellee filed a motion for an order finding appellants in contempt of court for violating the restraining orders by executing five individual mortgages on the Florida property in the aggregate amount of $87,500. Appellee requested an award of attorney fees with respect to her motion for the imposition of a constructive trust and her motion for contempt.

{¶ 7} On July 25, 28, 29, and 30, 2003, the court conducted a trial on appellee's motion for the imposition of a constructive trust and appellee's contempt motion. Prior to trial in July 2003, Martha filed a motion to dismiss appellee's motion for imposition of a constructive trust, arguing that the trial court lacked subject-matter jurisdiction to impose a constructive trust over the Florida property. The

court overruled Martha's motion to dismiss from the bench on July 25, 2003. On July 28, 2003, Martha filed a motion for reconsideration of her motion to dismiss, which the court overruled from the bench on July 29, 2003.

{¶ 8} On October 31, 2003, the trial court issued a decision and judgment entry, granting in part appellee's motion for imposition of a constructive trust and granting in part appellee's motion for an order finding appellants in contempt of court. The trial court imposed a constructive trust over the Florida property, ordered Martha to execute a general warranty deed conveying the Florida property to appellee, and made orders regarding rental income received from the Florida property. The trial court also found appellants in contempt of court and ordered appellants to serve ten days in the Franklin County jail, with said sentence suspended upon appellants' obtaining releases from each of the five mortgages secured against the Florida property within ten days from the filing of the decision and judgment entry. The trial court did not address or dispose of appellee's requests for an award of attorney fees relating to either motion. Appellants filed a notice of appeal from the trial court's October 31, 2003 decision and judgment entry on November 24, 2003, which we dismissed for lack of a final, appealable order on December 26, 2003.

{¶ 9} On January 16, 2004, appellants filed a motion for relief from judgment, pursuant to Civ.R. 60(A), requesting the trial court to correct an error in its October 31, 2003 decision and judgment entry regarding the amount of rental income appellants received in 2002. On January 30, 2004, the trial court issued an amended decision and judgment entry correcting the clerical error noted in appellants' motion. Based on the revised rental income for 2002, the court ordered appellee to pay appellants $1,698.73 as the difference between appellants' expenses incurred in excess of the rental income they received from the Florida property.

{¶ 10} Appellants filed a second motion for relief from judgment on May 4, 2004, pursuant to Civ.R. 60(B), arguing that newly discovered evidence regarding their 2003 earnings from rental income justified relief. The trial court denied appellants' Civ.R. 60(B) motion on July 12, 2004.

{¶ 11} On June 16, 2004, the trial court conducted an evidentiary hearing on appellee's requests for attorney fees. On October 19, 2004, the trial court issued a decision and entry denying appellee's request for attorney fees related to her motion for a constructive trust and granting appellee's request for attorney fees related to her motion for contempt. The trial court concluded that appellee was entitled to recover attorney fees of $4,131.53 related to her motion for contempt.

{¶ 12} Appellants set forth the following assignments of error:

1. The trial court erred and abused its discretion, in its decision and entry of January 30, 2004, when it found that the court had jurisdiction to impose a constructive trust over property that is located outside the state of Ohio, in this case the property located at 1885 [Westmoreland] Blvd., Port St. Lucie, Florida.

2. the trial court erred, abused its discretion, and ruled against the manifest weight of the evidence in its decision of January 30, 2004, when it imposed a constructive trust over the [Westmoreland] property.

3. The trial court erred and abused its [discretion], in its decision of October 19, 2004, when it awarded attorney fees in the amount of $4,131.53 to plaintiff.

4. The trial court erred and abused its discretion when it denied defendant-appellants motion for relief pursuant to Civ.R 60(B) in its decision and entry of July 12, 2004.

{¶ 13} In their first assignment of error, appellants assert that the trial court erred and abused its discretion when it determined that it had subject-matter jurisdiction to impose a constructive trust over the Florida property. Appellants argue that a court must have in rem jurisdiction over property before it can declare a constructive trust over it. The trial court orally overruled Martha's motion to dismiss and motion for reconsideration, both of which Martha premised on lack of subject-matter jurisdiction, and reiterated those rulings in its October 31, 2003 and January 30, 2004 judgment entries. The standard of review for a motion to dismiss for lack of subject-matter jurisdiction is whether the complaint raises any cause of action cognizable by the forum. *State ex rel. Bush v. Spurlock* (1989), 42 Ohio St.3d 77, 80, 537 N.E.2d 641. In reviewing a motion to dismiss for lack of subject-matter jurisdiction, this court's standard of review is de novo. *Robinson v. AT & T Network Systems* (Mar. 29, 2002), Franklin App. No. 01AP–817, 2002 WL 479762; *Campbell v. Johnson* (Dec. 30, 1999), Franklin App. No. 99AP–483, 1999 WL 1267348.

{¶ 14} In determining that it had jurisdiction to impose a constructive trust over the Florida property, the trial court relied on *Bolinger v. Bolinger* (1990), 49 Ohio St.3d 120, 551 N.E.2d 157. In *Bolinger,* the Ohio Supreme Court held that "the subject-matter jurisdiction of a trial court * * * to formulate an equitable division of the marital assets commences when either party files a complaint for divorce and a division of the marital property." Id. at 123, 551 N.E.2d 157. The trial court determined that in 1984, at the time of appellee and Vance's divorce, it had subject-matter jurisdiction over the parties' marital assets to formulate an equitable division thereof and that such jurisdiction continued as to this postdecree matter. Under Civ.R. 75(J), formerly Civ.R. 75(I), the continuing jurisdiction of a court that issues a domestic-relations decree "may be invoked by the

filing of any motion by a party." *Blake v. Heistan* (1994), 99 Ohio App.3d 84, 87, 649 N.E.2d 1304. Thus, the trial court concluded that it possessed subject-matter jurisdiction to decide appellee's May 25, 2001 motion for imposition of a constructive trust to effectuate the court's prior divorce decree.

{¶ 15} The Supreme Court has defined a constructive trust as follows: "[A] trust by operation of law which arises contrary to intention and in invitum, against one who, by fraud, actual or constructive, by duress or abuse of confidence, by commission of wrong, or by any form of unconscionable conduct, artifice, concealment, or questionable means, or who in any way against equity and good conscience, either has obtained or holds the legal right to property which he ought not, in equity and good conscience, hold and enjoy."

*Ferguson v. Owens* (1984), 9 Ohio St.3d 223, 225, 9 OBR 565, 459 N.E.2d 1293, quoting 76 American Jurisprudence 2d (1975) 446, Trusts, Section 221. A constructive trust is an equitable remedy used " '[w]hen property has been acquired in such circumstances that the holder of the legal title may not in good conscience retain the beneficial interest.' " Id. at 225, 9 OBR 565, 459 N.E.2d 1293, quoting *Beatty v. Guggenheim Exploration Co.* (1919), 225 N.Y. 380, 386, 122 N.E. 378; *Cosby v. Cosby*, 96 Ohio St.3d 228, 2002-Ohio-4170, 773 N.E.2d 516, ¶ 17. Continuing its discussion of constructive trusts, the Supreme Court stated:

A constructive trust is, in the main, an appropriate remedy against unjust enrichment. This type of trust is usually invoked when property has been acquired by fraud. However, a constructive trust may also be imposed where it is against the principles of equity that the property be retained by a certain person even though the property was acquired without fraud. See 53 Ohio Jurisprudence 2d (1962) 578–579, Trusts, Section 88; V Scott on Trusts (3 Ed.1967), 3412, Section 462.

*Ferguson* at 226, 9 OBR 565, 459 N.E.2d 1293. Thus, Ohio courts have described a constructive trust as "a relationship associated with property subjecting the title holder to an equitable duty to convey it to another because otherwise the title holder would be unjustly enriched." *Union S. & L. Assn. v. McDonough* (1995), 101 Ohio App.3d 273, 276, 655 N.E.2d 426. By imposing a constructive trust, a court orders a person who owns the legal title to property to hold or use the property for the benefit of another or to convey the property to another to avoid unjust enrichment. *Everhard v. Morrow* (Dec. 2, 1999), Cuyahoga App. No. 75415, 1999 WL 1087488.

{¶ 16} The thrust of appellants' jurisdictional argument is that an Ohio court lacks subject-matter jurisdiction to impose a constructive trust over real property located in Florida because the Ohio court does not have in rem jurisdiction over the Florida property. Appellants argue that *Bolinger* does not give an Ohio court in rem jurisdiction over property located outside the state of Ohio and that

the trial court's lack of in rem jurisdiction over the Florida property precluded it from validly declaring a constructive trust over the property.

{¶ 17} Appellants correctly assert that a court of one state has no power to directly affect title to land located wholly within the borders of another state. In *Fall v. Eastin* (1909), 215 U.S. 1, 30 S.Ct. 3, 54 L.Ed. 65, the United States Supreme Court noted as firmly established "the doctrine that the court, not having jurisdiction of the res, cannot affect it by its decree, nor by a deed made by a master in accordance with the decree." Id. at 11, 30 S.Ct. 3, 54 L.Ed. 65. It is upon this holding that appellants base their jurisdictional argument. However, the Supreme Court also noted that "[t]he territorial limitation of the jurisdiction of courts of a state over property in another state has a limited exception in the jurisdiction of a court of equity * * *." Id. at 8, 30 S.Ct. 3, 54 L.Ed. 65. "A court of equity, having authority to act upon the person, may indirectly act upon real estate in another state, through the instrumentality of this authority over the person." Id. The Supreme Court stated that the following was a "well-recognized principle:"

> [W]hen the subject matter of a suit in a court of equity is within another state or country, but the parties within the jurisdiction of the court, the suit may be maintained and remedies granted which may directly affect and operate upon the person of the defendant, and not upon the subject-matter, although the subject-matter is referred to in the decree, and the defendant is ordered to do or refrain from certain acts toward it, and it is thus ultimately but *indirectly* affected by the relief granted.

(Emphasis sic.) Id. at 11, 30 S.Ct. 3, 54 L.Ed. 65. It is upon this holding that appellee bases her argument that the trial court, by virtue of its jurisdiction over the parties hereto, had jurisdiction to impose a constructive trust and order appellants to transfer the Florida property.

{¶ 18} As stated in *Fall*, a court of equity, by means of its power over the person of a party, may compel the party to act in relation to property located outside the court's territorial jurisdiction. Id. at 9–10, 30 S.Ct. 3, 54 L.Ed. 65, citing *Carpenter v. Strange* (1891), 141 U.S. 87, 105, 11 S.Ct. 960, 35 L.Ed. 640. The court's decree does not operate directly upon the property or affect its title, but is made effectual through coercion of the defendant. *Fall* at 10–11, 30 S.Ct. 3, 54 L.Ed. 65. Thus, in *Fall*, the Supreme Court distinguishes between a judicial conveyance of title, which directly affects title to property, and a court order against the persons over whom it has personal jurisdiction, which indirectly affects title to property. With respect to out-of-state property over which the court has no in rem jurisdiction, the former is impermissible while the latter is not. In the instant case, the trial court's judgment did not attempt to directly convey title to the Florida property; it merely ordered appellants to do so.

{¶ 19} Prior to the United States Supreme Court's decision in *Fall,* the Ohio Supreme Court reached a similar conclusion. In *Burnley v. Stevenson* (1873), 24 Ohio St. 474, 1873 WL 87, the Ohio Supreme Court held that "courts exercising chancery powers in one state have jurisdiction to enforce a trust, and to compel the specific performance of a contract in relation to lands situate in another state, after having obtained jurisdiction of the persons of those upon whom the obligation rests." Id. at 478. In *Burnley,* the Supreme Court considered the validity of a Circuit Court of Kentucky decree, which directed one party to convey land located in Ohio to John Evans, a surveyor, to whose rights the defendants succeeded. Id. The Ohio Supreme Court held that the Kentucky court, having jurisdiction over the parties, had jurisdiction to enforce a constructive trust arising from the failure of a deceased owner of land in Ohio to perform a contract to convey part of such land to Evans. As did the United States Supreme Court in *Fall,* the Ohio Supreme Court recognized that a court's jurisdiction to compel a party to act in relation to out-of-state property did not extend to the court itself conveying such property by decree. Id.

{¶ 20} Although our research has revealed no Ohio case citing *Fall,* other state courts' applications of *Fall* are instructive as to the jurisdictional issue presently before us. In *Kerns v. Kerns* (Colo.2002), 53 P.3d 1157, the Supreme Court of Colorado held that an equitable action to impose a constructive trust on real property does not operate directly upon the property's title, even though it has the potential to indirectly affect title. Id. at 1164–1165, citing *Ross v. Specialty Risk Consultants, Inc.* (2000), 240 Wis.2d 23, 621 N.W.2d 669, 676. The court went on to note that " '[t]he successful plaintiff in a constructive trust action wins an in personam order that requires the defendant, the constructive trustee, to transfer specific property in some form to the plaintiff, the beneficiary, of the trust.' " *Kerns* at 1165, quoting *In re Marriage of Allen* (Colo.1986), 724 P.2d 651, 656–657. In *Andre v. Morrow* (1984), 106 Idaho 455, 680 P.2d 1355, the Supreme Court of Idaho held that a California court with in personam jurisdiction over the parties before it had jurisdiction to impose a constructive trust on property in Idaho. In *Meador v. Manlove* (1916), 97 Kan. 706, 156 P. 731, the Supreme Court of Kansas determined that the trial court, having personal jurisdiction over the defendants, had jurisdiction to render a decree declaring a trust over property located in Illinois and directing defendants to convey such property to plaintiffs.

{¶ 21} In addition to cases addressing the specific issue of a constructive trust, many courts have held, more generally, that a court may exercise its in personam jurisdiction to order a party to convey property located outside the state and that such an order does not act directly upon title to the out-of-state property. See *Breitenstine v. Breitenstine* (Wy.2003), 62 P.3d 587; *TWE Retirement Fund*

*Trust v. Ream* (2000), 198 Ariz. 268, 8 P.3d 1182; *Gen. Elec. Capital Corp. v. Advance Petroleum, Inc.* (Fla.App.1995), 660 So.2d 1139; *Cole v. Manning* (1926), 79 Cal.App. 55, 248 P. 1065; *Matarese v. Calise* (1973), 111 R.I. 551, 305 A.2d 112.

{¶ 22} Despite the above-cited authority, appellants argue that the trial court could not validly declare a constructive trust over the Florida property in the absence of in rem jurisdiction over the property. In support of that argument, appellants cite *Soeder v. Burton* (Dec. 2, 1988), Ashtabula App. No. 1361, 1988 WL 129455. In that case, in the context of determining whether the lawsuit included all necessary parties, the Eleventh District Court of Appeals stated:

> In an action imposing a constructive trust, the determination of the status of the property in dispute is an in rem action. 53 Ohio Jurisprudence 2d (1962), 583, Trusts, Section 91. * * * Such actions are not only binding upon the parties in the dispute but upon third parties as well.

However, in *Burnley,* the Ohio Supreme Court distinguished between an in personam order to compel parties before it to convey property and an in rem decree, which itself operates as such a conveyance. While an in rem decree conveying title cannot operate beyond the limits of the state in which it is rendered, the Ohio Supreme Court held that a Kentucky court with in personam jurisdiction over the parties could validly issue a decree directing a party to convey land located in Ohio. *Burnley* at 478. We find that *Burnley* compels the conclusion that the trial court herein could exercise its in personam jurisdiction over the parties to impose a constructive trust over the Florida property and to order appellants to transfer the Florida property to appellee.

{¶ 23} In this case, the trial court's judgment entry imposing a constructive trust over the Florida property did not purport to directly convey title to the Florida property. Rather, the court exercised its in personam jurisdiction over appellants and ordered them to execute a general warranty deed conveying the Florida property to appellee. Because the trial court had in personam jurisdiction over all of the parties, the trial court had jurisdiction to compel appellants to take action with respect to the Florida property, including compelling appellants to convey it to appellee. Accordingly, we overrule appellants' first assignment of error.

{¶ 24} In their second assignment of error, appellants assert that, even assuming the trial court had jurisdiction to do so, the trial court erred, abused its discretion, and ruled against the manifest weight of the evidence when it imposed a constructive trust over the Florida property. A party asserting the existence of a constructive trust must prove its existence by clear and convincing evidence. *LeCrone v. LeCrone,* Franklin App. No. 04AP–312, 2004-Ohio-6526, 2004 WL 2806387, ¶ 15. Clear and convincing evidence is evidence sufficient to establish "in the mind of the trier of facts a firm belief or conviction as to the

allegations sought to be established." *Cross v. Ledford* (1954), 161 Ohio St. 469, 477, 53 O.O. 361, 120 N.E.2d 118. A judgment supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence. *C.E. Morris Co. v. Foley Construction Co.* (1978), 54 Ohio St.2d 279, 280, 8 O.O.3d 261, 376 N.E.2d 578. Thus, we must examine the record to determine if competent, credible evidence supports the trial court's imposition of a constructive trust.

{¶ 25} A constructive trust is an equitable remedy against unjust enrichment, usually invoked when one has acquired title to property by fraud. *Ferguson* at 226, 9 OBR 565, 459 N.E.2d 1293. However, a court may impose a constructive trust in the absence of fraud where it is inequitable for the person holding legal title to the property to retain it. *LeCrone* at ¶ 11. Thus, unjust enrichment may serve as the basis for a constructive trust. Id. Under their second assignment of error, appellants initially argue that their acquisition of the Florida property has not resulted in unjust enrichment necessitating the imposition of a constructive trust. Unjust enrichment occurs when a party retains money or benefits which, in justice and equity, belong to another. *Liberty Mut. Ins. Co. v. Indus. Comm.* (1988), 40 Ohio St.3d 109, 110–111, 532 N.E.2d 124, citing *Stan–Clean of Lexington, Inc. v. Stanley Steemer Internatl., Inc.* (1981), 2 Ohio App.3d 129, 131, 2 OBR 143, 440 N.E.2d 1237; *Hummel v. Hummel* (1938), 133 Ohio St. 520, 528, 11 O.O. 221, 14 N.E.2d 923.

{¶ 26} Appellants argue that the trial court did not find that they have been unjustly enriched by their acquisition of the Florida property and that, absent such a finding, the trial court's imposition of a constructive trust was in error. The trial court found that Vance's actions in conveying the Florida property to Martha altered his prior bequest to appellee and thereby defeated appellee's interest in the property, in violation of the divorce decree. The court found that pursuant to the divorce decree, appellee was to obtain exclusive legal title to the Florida property upon Vance's death. To permit appellants to retain title to the Florida property would result in enrichment that in equity belongs to appellee. Based on Vance's wrongful disposition of the Florida property, the trial court found that equity required the imposition of a constructive trust over the Florida property. As found by the trial court, the facts support a finding of unjust enrichment. Although appellants argue that they have spent large sums of money on improvements and property taxes with respect to the Florida property, those expenditures do not require the conclusion that they are not unjustly enriched by retention of the property.

{¶ 27} Appellants also argue that the evidence did not establish that they obtained title to the Florida property by means that could support the imposition

of a constructive trust, such as fraud, duress, abuse of confidence, commission of wrong or any form of unconscionable conduct, artifice, concealment or questionable means. In fact, the trial court expressly found that appellants "did not take actions to acquire the [Florida] property through fraudulent or other questionable means." Nevertheless, where the holder of legal title to property holds title against equity and good conscience and will be unjustly enriched by retaining title, Ohio courts have not required that the holder obtained title by fraudulent or questionable means before imposing a constructive trust. Rather, this court has expressly stated that a property holder's status as an innocent party to the actions of the decedent from whom he acquired such property is not dispositive in an action to impose a constructive trust. *Bailey v. Prudential Ins. Co. of Am.* (1997), 124 Ohio App.3d 31, 36, 705 N.E.2d 389.

{¶ 28} In *Bailey,* a divorce decree required Edward Maksem to maintain his ex-wife, Mary Kay Maksem, as the beneficiary of a $10,000 life-insurance policy. Subsequently, Mr. Maksem executed a new beneficiary designation naming Susan E. Bailey as the sole beneficiary of his $10,000 life-insurance policy. After Mr. Maksem died, Ms. Bailey filed an action to recover the insurance-policy proceeds, and Ms. Maksem filed a counterclaim to have a constructive trust imposed upon the insurance-policy proceeds. By virtue of the divorce decree, this court held that Ms. Maksem had an equitable right to the insurance proceeds that was superior to the named beneficiary's legal right, despite the fact that Ms. Bailey, the named beneficiary, was an innocent party regarding Mr. Maksem's change of beneficiary. Id. at 35–36, 705 N.E.2d 389. Therefore, this court found that the trial court erred by failing to impose a constructive trust on the life-insurance proceeds in favor of Ms. Maksem. Id. at 39, 705 N.E.2d 389.

{¶ 29} A court may impose a constructive trust where the person holding legal title to the property is subject to an equitable duty to convey the property because he acquired it through another's wrongful disposition of the property. *Bilovocki v. Marimberga* (1979), 62 Ohio App.2d 169, 171, 16 O.O.3d 369, 405 N.E.2d 337, citing 5 Scott on Trusts (1967), Section 404.2. Specifically, a constructive trust may arise when the legal holder of property obtained such property from a person attempting to avoid an obligation imposed by a court decree. See *Aetna Life Ins. Co. v. Hussey* (1992), 63 Ohio St.3d 640, 590 N.E.2d 724; *Kelly v. Medical Life Ins. Co.* (1987), 31 Ohio St.3d 130, 31 OBR 289, 509 N.E.2d 411.

{¶ 30} In *Aetna Life Ins. Co.,* a separation agreement embodied in a divorce decree required Raymond W. Hussey Jr., to maintain a life-insurance policy naming his daughter, Kelly Rae Hussey, the irrevocable beneficiary of the policy until she attained the age of 22. Although Mr. Hussey initially named his daughter as the beneficiary of his life-insurance policy, he executed changes of

beneficiary prior to his daughter's reaching the age of 22. Mr. Hussey first named his new wife and then a trustee as beneficiary of the life-insurance policy. Kelly Hussey was 18 years old at the time of her father's death. The Ohio Supreme Court held that a constructive trust should be imposed upon the proceeds from Mr. Hussey's life-insurance policy in favor of Kelly, without regard to any wrongful actions by the subsequently named beneficiaries. Id.

{¶ 31} Likewise, in *Kelly,* the Supreme Court held that "[a] constructive trust is the appropriate remedy to ensure that insurance proceeds are paid to those who were to be named beneficiaries of an insurance policy by the terms of a separation agreement embodied in a divorce decree." Id. at paragraph two of the syllabus. In *Kelly,* a separation agreement embodied in a divorce decree required James Kelly to name his minor children as beneficiaries on all life-insurance policies he had through his employment and through the Veterans Administration so long as his support obligation existed. Mr. Kelly died without having named his minor children as beneficiaries on a life-insurance policy acquired through his employer. Rather, Mr. Kelly's brother was the named beneficiary on the policy. Without considering the conduct of the named beneficiary, the Supreme Court found that a constructive trust existed over the proceeds of Mr. Kelly's life-insurance policy for the benefit of his minor children. Id. at 133, 31 OBR 289, 509 N.E.2d 411.

{¶ 32} Having been incorporated into the divorce decree, appellee and Vance's agreement requiring Vance to bequeath the Florida property to appellee acquired the sanctity of a court order. See *Thomas v. Ferguson* (Aug. 10, 1983), Summit App. No. 11019, 1983 WL 4184. Vance's conveyance of the Florida property to Martha had the effect of avoiding his court-ordered obligation under the divorce decree and depriving appellee of her equitable interest in the Florida property. Moreover, the record contains competent and compelling evidence that appellants' retention of the Florida property would result in unjust enrichment. Thus, equity requires the imposition of a constructive trust over the Florida property.

{¶ 33} Also in their second assignment of error, appellants argue that Martha was a bona fide purchaser for value of the Florida property, so that a constructive trust may not attach thereto. It is well-settled that "a constructive trust will not attach to property acquired by a bona fide purchaser—one who acquires title to property for value and without notice of another's equitable interest in that property." *Everhard,* Cuyahoga App. No. 75415, 1999 WL 1087488. A bona fide purchaser is one "who takes property 1) for valuable consideration, 2) in good faith, and 3) absent notice of any adverse claims." *Hightower v. Reiger* (Oct. 6, 1988), Cuyahoga App. No. 54447, 1988 WL 112525. Consideration consists of a benefit to the promisor or a detriment to the promisee. *Carlisle v. T & R Excavating, Inc.* (1997), 123 Ohio App.3d 277, 283,

704 N.E.2d 39. To constitute consideration, the benefit or detriment must be bargained for. Id.

{¶ 34} Appellants contend that the evidence established that Martha acquired title to the Florida property for value and without notice of any adverse equitable claim by appellee. Although the evidence does establish that Martha had no actual notice of appellee's adverse claim on the Florida property prior to Vance's conveyance of title, we find that the record contains competent, credible evidence supporting the trial court's finding that Martha did not acquire the Florida property for valuable consideration.

{¶ 35} Appellants argue that they incurred significant debts, medical bills, and personal expenses to care for Vance prior to his death and that Vance conveyed the Florida property to Martha in consideration of the care he received from appellants. Appellants also claim that they incurred considerable expenses to renovate and improve the Florida property subsequent to acquiring title. Nevertheless, the trial court found that appellants did not provide valuable consideration for the conveyance of the Florida property. We agree.

{¶ 36} Martha testified that she did not pay her father for the Florida property. Martha had no specific conversations with her father regarding the assets, including the Florida property, her father listed on his financial disclosure during the dissolution of his fourth marriage in 1999. Martha did not discuss her father's finances or property holdings with him. Martha was not present when her father executed the deed conveying the Florida property to her and cannot recall learning of his intention to do so prior to the conveyance. About the transfer, Martha testified, "Just one day my father informed me that he was giving me the property in Florida." Martha did testify that her father told her he was giving her the Florida property "[i]n consideration for everything that we *had done* for him." (Emphasis added.) However, past consideration is not legally sufficient to support a contract. *Carlisle* at 285, 704 N.E.2d 39, citing *Gem Sav. Assn. v. Aqua Sportsman, Inc.* (Aug. 12, 1992), Hamilton App. No. C–910361, 1992 WL 192500.

{¶ 37} Elmer's testimony likewise fails to demonstrate that his wife gave valuable consideration for Vance's transfer of the Florida property. Elmer testified that he and his wife had no discussion, agreement or understanding with Vance regarding the payment of expenses. The only agreement Martha and Elmer had with Vance was that Vance would continue to receive rents from the Florida property until the time of his death to help with his expenses. Additionally, Elmer testified that with or without the Florida property, he would have taken Vance into his home and provided Vance medical care, hospital care, and nursing care to the best of his ability. Elmer would not say that his and his wife's treatment of Vance would have been any different had the Florida property

not existed, "[b]ecause he was our father and we loved him and we wanted to take care of him." Review of the record reveals no evidence that appellants bargained for the detriment from their care and financial support of Vance in exchange for the Florida property.

{¶ 38} The trial court found that any expenses appellants incurred to renovate and improve the Florida property subsequent to Vance's conveyance to Martha do not constitute valuable consideration for the conveyance. Appellants had no written or oral agreement with Vance regarding expenses for repairs or improvements on the Florida property. Because they had no agreement with Vance to undertake the repairs, the expenses relating to repairs to the Florida property after the conveyance do not constitute consideration for Vance's transfer of the property to Martha. Moreover, appellants incurred many of the expenses after they became aware of appellee's interest in the Florida property.

{¶ 39} In September 2000, appellants attempted to obtain a loan secured by a mortgage on the Florida property, but were unable to close the loan because of a cloud on the title related to appellee. Elmer first learned of appellee's claimed interest in the Florida property in September 2000. Martha likewise became aware of a title problem with respect to the Florida property in the fall of 2000. Elmer contacted appellee to ask her if she would participate in the execution of the mortgage on the Florida property or remove the cloud from the title, but she refused. Elmer knew he could have requested a copy of whatever was causing a cloud on the title. Nevertheless, appellants did not request a title report, did not obtain a copy of Vance and appellee's divorce decree, and did not seek legal counsel with respect to the cloud on the Florida property's title. Elmer knew of the cloud on the Florida property's title before he spent any money on the property. Thus, despite their knowledge of a title problem, appellants spent large sums of money to improve the Florida property. Such expenditures, undertaken after Vance's conveyance to Martha, in the absence of any agreement with Vance, and with knowledge of appellee's interest, do not constitute consideration for the conveyance of the Florida property.

{¶ 40} Because some competent, credible evidence supports the trial court's imposition of a constructive trust, the court's imposition of a constructive trust was not against the manifest weight of the evidence, and we overrule appellants' second assignment of error.

{¶ 41} In their third assignment of error, appellants contend that the trial court erred and abused its discretion when it awarded appellee attorney fees of $4,131.53 on appellee's motion for contempt.[1] Appellants argue that appellee did

---

1. Although appellee also requested an award of attorney fees relating to her motion for imposition of a constructive trust, the trial court denied imposing fees relative thereto based on its conclusion that appellants did not act in bad faith in acquiring the Florida property.

not meet her burden to show what portion of her attorney fees were associated with her motion for contempt and that the amount of fees the trial court awarded was arbitrary and not accurately based on fees associated with appellee's motion for contempt.

{¶ 42} An appellate court may not reverse a trial court's decision regarding an attorney-fee award absent an abuse of discretion. *Rand v. Rand* (1985), 18 Ohio St.3d 356, 359, 18 OBR 415, 481 N.E.2d 609. Abuse of discretion connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 5 OBR 481, 450 N.E.2d 1140.

{¶ 43} At the hearing on attorney fees, appellee's counsel testified and submitted his bill for legal services rendered to appellee. Appellee's bill for attorney fees and costs totaled $17,326.80, and represented work her counsel performed from May 15, 2001, through March 3, 2004. Appellee's counsel testified that he charged an hourly rate of $195, although he billed some work at an hourly rate of $150. Appellants' counsel stipulated to the reasonableness of those hourly rates. Appellee's counsel further testified that the charges set forth in his bill are fair and reasonable in conjunction with the issues presented.

{¶ 44} "A trial court has discretion to include reasonable attorney fees as a part of costs taxable to a defendant found guilty of civil contempt." *State ex rel. Fraternal Order of Police v. Dayton* (1977), 49 Ohio St.2d 219, 3 O.O.3d 360, 361 N.E.2d 428, syllabus. A trial court has such discretion even in the absence of a statute specifically authorizing attorney fees. The party seeking an award of attorney fees bears the burden of proof to establish their reasonableness. *Conley v. Conley* (Apr. 26, 1990), Franklin App. No. 89AP–826, 1990 WL 54282, citing *Cohen v. Cohen* (1983), 8 Ohio App.3d 109, 8 OBR 143, 456 N.E.2d 581. A trial court may evaluate the work performed by an attorney in a domestic-relations action. *Ward v. Ward* (June 18, 1985), Franklin App. No. 85AP–61, 1985 WL 10335. The trial court may use its own knowledge and experience to determine the reasonableness of the amount claimed. Id.

{¶ 45} In this case, appellee's counsel introduced evidence of attorney fees and costs totaling $17,326.80 for work performed between May 15, 2001, and March 3, 2004. Appellee's counsel conceded that fees charged after October 31, 2003, related to either appellee's prior appeal or to a subsequent contempt action and were irrelevant to the trial court's formulation of a fee award based on either appellee's motion for imposition of a constructive trust or appellee's initial motion for contempt. Additionally, because the trial court found that appellee was entitled to recover attorney fees related only to her motion for contempt, the trial

court eliminated from its consideration all charges assessed prior to May 15, 2003, when appellee first learned of appellants' contemptuous actions.

{¶ 46} Based on the record before it, the trial court concluded that attorney fees of $907.50 and costs of $187.78 related solely to appellee's motion for contempt. The court also concluded that appellee's counsel assessed $6,072.50 in legal fees for his preparation for and attendance at the four-day trial and counsel's posttrial work preparing proposed findings of fact and conclusions of law. Because the trial involved both appellee's motion for imposition of a constructive trust and appellee's motion for contempt, the trial court determined that a portion of the $6,072.50 in legal fees related to appellee's motion for contempt. Thus, the trial court awarded appellee half of the $6,072.50 legal fees as that portion arising out of her motion for contempt. The trial court added that amount to the $187.78 in costs and $907.50 in legal fees specifically traced to appellee's motion for contempt to arrive at its award of $4,131.53.

{¶ 47} Appellants argue that appellee may not recover attorney fees not associated with her motion for contempt. In support of their argument, appellants cite *Sateren v. Sateren* (Apr. 20, 1995), Franklin App. No. 94APF10–1561, 1995 WL 238426. In *Sateren*, the plaintiff filed a motion for contempt and for an award of attorney fees and expenses four days after the filing of an agreed judgment entry/decree of divorce. Almost all of the attorney fees the plaintiff sought were for services performed prior to the filing of the divorce decree. The trial court denied the plaintiff's motion for contempt, but awarded attorney fees pursuant to R.C. 3105.18(H). On appeal, this court concluded that the trial court's award of fees unrelated to enforcing compliance with the divorce decree was in error because the agreed judgment entry/decree of divorce expressly provided that each party would be responsible for its own legal fees until the effective date of the decree. Therefore, this court vacated the trial court's award of attorney fees and remanded for a new calculation of fees related to enforcing compliance with the divorce decree. *Sateren* is clearly distinguishable from the instant case, in which the trial court awarded attorney fees based not on R.C. 3105.18(H), but on a finding of civil contempt, and in which the parties did not agree to maintain responsibility for their own fees.

{¶ 48} Appellants argue that the trial court's determination that half of appellee's legal fees arising from her counsel's preparation for and attendance at trial and subsequent preparation of proposed findings of fact and conclusions of law was attributable to appellee's motion for contempt was arbitrary. At the hearing on attorney fees, appellee's counsel testified that a portion of his fees was attributable to the motion for contempt, although he could not precisely divide his fees between the motion for contempt and the motion for imposition of a constructive trust. This court has previously held that a trial court may award

attorney fees in a contempt action arising from a domestic-relations case in the absence of supporting evidence when the amount of work and time spent on the case is apparent. *Karales v. Karales* (Aug. 21, 2001), Franklin App. No. 00AP–1428, 2001 WL 950158. The four-day trial consisted entirely of evidence on the two motions for which appellee requested attorney fees. Counsel's inability to precisely divide his trial fees between the two motions does not render the trial court's determination arbitrary.

{¶ 49} In its determination of attorney fees, the trial court noted DR 2–106(B) of the Ohio Code of Professional Responsibility, which lists factors for courts to consider in determining the reasonableness of attorney fees. The court stated that the fees charged by appellee's counsel were not uncharacteristic of the fees customarily charged in this locality for similar legal services. The trial court also expressly found that "resolution of the contempt issue lasted a number of months and entailed frequent communication between Plaintiff, Plaintiff's counsel and defendants Hays' counsel, as well as in depth briefs and memoranda, and numerous court appearances." The trial court was aware that appellee's attorney was expending time before, during, and after the trial on issues raised in appellee's motion for contempt and, having heard the evidence presented at trial, was in a position to appropriate the time spent in trial between appellee's motion for contempt and motion for imposition of a constructive trust. Upon review of the record, we find nothing indicating that the trial court acted unreasonably, arbitrarily, or unconscionably in awarding attorney fees of $4,131.53 on appellee's motion for contempt. Therefore, we find that the trial court did not abuse its discretion in entering that award. Accordingly, we overrule appellants' third assignment of error.

{¶ 50} In their fourth and final assignment of error, appellants contend that the trial court erred and abused its discretion by denying appellants' Civ.R. 60(B) motion for relief from judgment. An appellate court will not reverse a judgment denying a motion for relief from judgment pursuant to Civ.R. 60(B) absent an abuse of discretion. *Countrywide Home Loans v. Barclay*, Franklin App. No. 04AP–171, 2004-Ohio-6359, 2004 WL 2715904, ¶ 8.

{¶ 51} In their Civ.R. 60(B) motion for relief from judgment, appellants moved the trial court to modify its January 30, 2004 amended decision and judgment entry based on additional evidence not presented at trial. Like its previous decision and entry, the trial court's January 30, 2004 amended decision and judgment entry did not address appellee's claims for attorney fees. When an order "adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties, [it] shall not terminate the action * * * and the order * * * is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties." Civ.R. 54(B). A

judgment entry resolving fewer than all the claims is not final unless the court expressly determines and states that there is "no just reason for delay." Id. The trial court's amended decision and judgment entry did not adjudicate appellee's claim for attorney fees, and the court did not expressly determine and state that there was no just reason for delay. Therefore, it was not a final judgment.

{¶ 52} Only final judgments are subject to vacation or modification pursuant to Civ.R. 60(B). *Jarrett v. Dayton Osteopathic Hosp., Inc.* (1985), 20 Ohio St.3d 77, 20 OBR 407, 486 N.E.2d 99. Because the trial court's amended decision and judgment entry was not a final judgment, a motion for relief from judgment was not the proper procedural device for appellants to seek revision of that entry. See *Beck–Durell Creative Dept., Inc. v. Imaging Power, Inc.*, Franklin App. No. 02AP–281, 2002-Ohio-5908, 2002 WL 31417757, ¶ 8. A motion that seeks relief from a nonfinal, interlocutory order is more appropriately characterized as a motion for reconsideration. Id. at ¶ 9, citing *Pitts v. Dept. of Transp.* (1981), 67 Ohio St.2d 378, 21 O.O.3d 238, 423 N.E.2d 1105. A prematurely filed "motion for relief" from an interlocutory order should be treated as a motion for reconsideration. See *Lozon v. Malloy* (Nov. 24, 1992), Franklin App. No. 92AP–449, 1992 WL 356232.

{¶ 53} "Because a trial court has plenary power in ruling on a motion for reconsideration, we cannot reverse its judgment absent an abuse of discretion." *Hundsrucker v. Perlman*, Lucas App. No. L–03–1293, 2004-Ohio-4851, 2004 WL 2035398, ¶ 25, citing *Vanest v. Pillsbury Co.* (1997), 124 Ohio App.3d 525, 535, 706 N.E.2d 825. "It is suggested that when an interlocutory order is modified or vacated the standard for a common law motion for reconsideration, the 'apparent justice' standard, ought to apply, though the court should also be guided by Civ.R. 60(B) standards, albeit applied less rigorously." *Baker v. Schuler*, Clark App. No. 02CA0020, 2002-Ohio-5386, 2002 WL 31243491, ¶ 22, citing Klein/Darling, Ohio Civil Practice, Baldwin (1997 Ed.), Section AT 54–3.

{¶ 54} In its amended decision and judgment entry, the trial court ordered appellee to pay appellants $1,698.73 for expenses incurred incident to improving the Florida property through September 2003. This amount represented appellants' expenses in excess of the net rental income they received from the Florida property. In their motion for relief from judgment, appellants argued that the figure the court used for 2003 rental income was higher than their actual rental, thereby reducing the amount appellants are entitled to recover from appellee.

{¶ 55} The trial court considered rental income from January through September 2003, and based its figure for 2003 rental income upon Elmer's testimony.

Elmer testified that he and his wife received monthly net rental income of $1,080 for the Florida property. The court acknowledged Elmer's testimony that the real estate company that managed the Florida property deducted the cost of any necessary repairs to the property from the gross rental income. However, the court also noted that Elmer offered no testimony or evidence that the management company had deducted any costs in 2003, or that the Florida property's tenant had failed to pay any rent due in 2003. The court calculated 2003 rental income from January through September 2003 by multiplying the $1,080 monthly net rental income by nine months to arrive at its total of $9,720.

{¶ 56} Appellants argued that they were entitled to relief from judgment pursuant to Civ.R. 60(B)(2), which permits a court to grant relief from judgment based on "newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(B)." The newly discovered evidence upon which appellants rely is their 2003 Form 1099 from Palm Realty, which appellants received in February 2004, and which reflected appellants' earned net rental income of $7,845.50 in 2003. Because their rental income was less than the figure the court used in its calculations, appellants claimed that they were entitled to recover more of their improvement expenses from appellee. Using the 2003 rental-income figure reflected in the Form 1099, appellants asserted that they were entitled to receive a total of $3,573.23 from appellee, as opposed to the $1,698.73 set forth in the amended decision and judgment entry.

{¶ 57} The trial court found that although appellants' 2003 Form 1099 itself may not have been available at the time the court received evidence or rendered its decision, the information used to complete the Form 1099 was available by the time the court rendered its initial decision in October 2003 and its amended decision in January 2004. At the July 2003 trial, Elmer did not testify that the management company had deducted any costs from rent received during 2003. Nor did Elmer testify that the tenants failed to pay any rent due during 2003. Appellants do not explain why evidence of their net rental income through September 2003 was not available prior to the time the trial court entered either its October 31, 2003 decision and judgment entry or its January 30, 2004 amended decision and judgment entry. Additionally, appellants present no evidence of either the tenants' failure to pay rent or deductions by the management company for the months of August or September 2003, which would have occurred subsequent to the court's receipt of evidence in July 2003, but prior to the court's issuance of its decision.

{¶ 58} The trial court correctly found that the information reported on the Form 1099 could have been calculated based on rental receipts prior to the issuance of the Form 1099 itself. Thus, the Form 1099 itself was unnecessary as

proof of appellants' net rental income for the first nine months of 2003. Despite their knowledge of the trial court's calculation of 2003 rental income since receiving the court's October 31, 2003 decision and judgment entry, and their filing of a previous motion requesting modification of another figure appearing therein, appellants did not object to the court's calculation of 2003 rental income until May 4, 2004. Therefore, the trial court concluded that appellants had not presented newly discovered evidence entitling them to a modification of its amended decision and judgment entry. Although the trial court denied appellants' motion based expressly on appellants' failure to satisfy the requirement of Civ.R. 60(B), the trial court's findings likewise support denial of appellants' motion when viewed as a motion for reconsideration of an interlocutory order. Viewing appellants' motion as a motion for reconsideration, we find that the trial court did not abuse its discretion in denying the motion. Nothing in the record before us indicates that the trial court acted unreasonably, arbitrarily, or unconscionably by denying appellants' motion. Accordingly, we overrule appellants' fourth assignment of error.

{¶ 59} As stated above, we overrule each of appellants' assignments of error and affirm the judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations.

Judgment affirmed.

BROWN, P.J., and BRYANT, J., concur.