[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
[1] For consistency and clarity, we use the case caption used by the trial court. We note, however, that the petitioner in this action sought to change the minor child's name from Jacob Doyle Chitwood to Jacob Doyle Reed in conjunction with his adoption of the child. Because the trial court dismissed the petition, the child's name remains Jacob Doyle Chitwood.
 DECISION AND JUDGMENT ENTRY
{¶ 1} Michael Ryan Reed appeals the dismissal of his petition for adoption of Jacob Doyle Chitwood ("Jacob") by the Scioto County Court of Common Pleas, Probate Division. Specifically, Reed contends that the trial court erred when it found that he failed to prove that Jacob's natural father, Chad Jason Chitwood, did not provide maintenance and support for Jacob for a period of at least one year immediately preceding the filing of the adoption petition. Because the record contains some competent, credible evidence to support the trial court's finding that Chitwood did not fail without justifiable cause to provide maintenance and support for Jacob, we disagree. In addition, Chitwood contends in a cross-assignment of error that the trial court lacked subject matter jurisdiction because Reed did not strictly comply with R.C. 3107.05(B). Because we find that Reed's failure to attach any of the documents listed in R.C. 3107.05(B) would result in an error in the exercise of subject matter jurisdiction, rather than the absence of subject matter jurisdiction, we disagree. Accordingly, we overrule Reed's assignments of error, find that it is not necessary to address Chitwood's remaining cross-assignments of error, and affirm the judgment of the trial court.
 I. {¶ 2} Trisha, Chitwood's former wife, gave birth to their son, Jacob, in 1999. The couple divorced, and Trisha married Reed. Chitwood regularly paid child support via wage withholding from his paycheck. In July 2001, Chitwood's employer laid him off from his job. According to Scioto County Child Support Enforcement Agency records, the agency received his final wage withholding on July 9, 2001. The Agency disbursed the payment to Trisha on July 17, 2001.
 {¶ 3} On July 12, 2002, Reed filed a petition in the Pike County Probate Court to adopt Jacob. Trisha consented to the adoption. Reed did not include a certified copy of Jacob's birth certificate with the petition. The court continued the matter numerous times.
 {¶ 4} On January 22, 2004, Chitwood orally moved the court to dismiss the petition based on Reed's failure to include a certified copy of the birth certificate. On August 4, 2004, Reed filed a certified copy of the birth certificate. On October 6, 2004, Chitwood filed a memorandum in support of his motion to dismiss based on Reed's failure to file the certificate with the petition, alleging that the failure deprived the court of subject matter jurisdiction. Additionally, Chitwood filed a motion to transfer the case to the Scioto County Probate Court.
 {¶ 5} The Pike County Probate Courty denied Chitwood's motion to dismiss, but granted his motion to transfer the case. The Scioto County Probate Court scheduled a hearing for August 17 and 18, 2005. At the commencement of the hearing on August 17, 2005, Chitwood renewed his motion to dismiss for lack of jurisdiction. The court denied his motion.
 {¶ 6} During the hearing, Chitwood testified that after his employer laid him off, he continued to take Jacob during his designated parenting time. Chitwood enlisted in the U.S. Navy in September 2001, in part because he was unable to find work and wanted to provide for Jacob. Jacob stayed with Chitwood for several weeks between July and September of 2001 before Chitwood left for basic training. During that time, Chitwood provided for Jacob's basic needs, such as food and clothing.
 {¶ 7} Chitwood testified that he made arrangements through his Navy recruiter for the Navy to withhold Jacob's child support from his pay. However, the withholding did not occur. Chitwood further testified that his training required him to be isolated on a ship where he had no access to his pay or banking information. Chitwood's mother, Betty Hicks, took Jacob to see Chitwood graduate from basic training in December 2001. During the trip, Hicks paid for Jacob's car seat, new clothing, food at each meal, and his hotel room. Hicks testified that she asked Reed and Trisha to loan her a car seat and provide suitable clothing for Jacob during the trip, but they refused. She purchased the items with money from Chitwood's bank account.
 {¶ 8} Chitwood came home for Christmas in 2001, and had contact with Trisha during his leave, but Trisha did not inform him that she had not received child support payments from him. Chitwood also saw Jacob over his Christmas leave, and gave Jacob Christmas presents.
 {¶ 9} Chitwood testified that, when he received his first leave and earnings statement in February 2002, he realized for the first time that the Navy had not withheld child support from his earnings. Chitwood filed a letter from the Navy reflecting that Chitwood took immediate action to correct his withholding after receiving his first leave and earnings statement in February 2002. In the letter, the Navy legal officer stated that the Navy failed to post Chitwood's withholding order. However, despite Chitwood taking action in February 2002 and the Navy's acknowledgement that the withholding should have begun sooner, the Scioto County Child Support Enforcement Agency did not receive a withholding from Chitwood's Navy wages until July 18, 2002.
 {¶ 10} Reed and Trisha both testified that they did not recall Chitwood exercising his parenting time during the summer of 2001. However, they conceded that Jacob went to Chitwood's Navy boot camp graduation. During Hicks' testimony, Chitwood entered photographs into evidence depicting Jacob and Chitwood during the relevant time period, wearing shoes and clothing that Chitwood purchased. Additionally, Chitwood presented the testimony of his friend Rick Newman, who testified that Jacob stayed with Chitwood during July and August of 2001.
 {¶ 11} The trial court found that Reed failed to show by clear and convincing evidence that Chitwood failed without justifiable cause to provide for the maintenance and support of Jacob between July 12, 2001 and July 12, 2002. Therefore, the trial court dismissed Reed's petition.
 {¶ 12} Reed appeals, and asserts two assignments of error: "1. The Court erred in dismissing the Petition for Adoption of the minor child Jacob Doyle Reed filed by Appellant, Michael Ryan Reed. 2. The Court erred in not finding that Father, Chad Chitwood had failed to provide for support and maintenance of the minor child, Jacob Doyle Reed, as required by law or judicial decree, for a period one (1) year, immediately preceding either the filing of the Adoption Petition, or the placement of the minor in the home of the Petitioner, Michael Ryan Reed."
 {¶ 13} Chitwood does not seek to change the lower court's judgment but raises three cross-assignments of error in defense of the judgment: 1. The judgment is not against the manifest weight of the evidence because competent, credible evidence supports it. 2. In addition to the evidence that the trial court relied on, other competent, credible evidence at the hearing supported its judgment. And, 3. The lower court did not have subject matter jurisdiction over this adoption because Reed did not strictly comply with R.C. 3107.05(B).
 II. {¶ 14} Normally we would not address any of Chitwood's cross-assignments of error until after we found merit in one of Reed's assignments of error. However, Chitwood raises the issue of subject matter jurisdiction in his third cross-assignment of error. Hence, we will now address this cross-assignment of error out of order.
 {¶ 15} Chitwood argues that we should affirm the trial court's decision to dismiss the petition because the trial court should not have reached the merits of the petition. He contends that the trial court did not possess subject matter jurisdiction because Reed failed to attach a certified copy of Jacob's birth certificate to the petition as required by R.C. 3107.05(B).
 {¶ 16} Subject matter jurisdiction is defined as a court's power to hear and decide cases. State ex rel. Tubbs Jones v.Suster (1998), 84 Ohio St.3d 70, 73. Subject matter jurisdiction may be raised at any time and may be raised sua sponte by any court. State ex rel. Bond v. Velotta Co., 91 Ohio St.3d 418,419, 2001-Ohio-91. However, absent a patent and unambiguous lack of jurisdiction, a court of common pleas can determine its own jurisdiction to hear a cause. Brooks v. Gaul,89 Ohio St.3d 202, 203, 2000-Ohio-133. A motion to dismiss for lack of subject matter jurisdiction raises a question of law, subject to the de novo standard of review. Groza-Vance v. Vance,162 Ohio App.3d 510, 2005-Ohio-3815 at ¶ 13; see, also, State ex rel. Rothal v.Smith, 151 Ohio App.3d 289, 2002-Ohio-7328 at ¶ 110.
 {¶ 17} The probate court derives its subject matter jurisdiction from R.C. 2101.24. While the subject matter of adoption proceedings is not specifically mentioned in the statute, R.C. 2101.24(A)(2) provides: "In addition to the exclusive jurisdiction conferred upon the probate court by division (A)(1) of this section, the probate court shall have exclusive jurisdiction over a particular subject matter if both of the following apply: (a) Another section of the Revised Code expressly confers jurisdiction over that subject matter upon the probate court. [And,] (b) No section of the Revised Code expressly confers jurisdiction over that subject matter upon any other court or agency."
 {¶ 18} R.C. 3107.04(A) provides that "[a] petition for adoption shall be filed in the court * * *." R.C. 3107.01(D) defines "court" as "the probate courts of this state[.]" Therefore, Chapter 3107 of the Revised Code expressly confers jurisdiction over adoptions upon the probate court. See State exrel. Portage County Welfare Dept. v. Summers (1974),38 Ohio St. 2d 144. In addition, no other section of the Revised Code expressly confers jurisdiction over adoption proceedings upon any other court or agency. Consequently, the Scioto County Probate Court has subject matter jurisdiction over adoptions.
 {¶ 19} R.C. 3107.05 is entitled "Petition; documents to be filed with the clerk." R.C. 3107.05(A) states that a petition for adoption shall be prepared and filed according to the procedure for commencing an action under the Rules of Civil Procedure, and "shall include the following information * * *." The list of information includes numerous items, such as the name and birth date of the person to be adopted. R.C. 3107.05(B) states in its entirety: "A certified copy of the birth certificate of the person to be adopted, if available, and ordinary copies of the required consents, and relinquishments of consents, if any, shall be filed with the clerk."
 {¶ 20} Chitwood contends that the mandatory language of R.C.3107.05(B) requires strict compliance, and that a petitioner's failure to file a certified copy of the birth certificate with the initial petition therefore deprives the trial court of jurisdiction. Additionally, he notes that parental consent to an adoption order is a jurisdictional prerequisite, and the requirement for a certified copy of the birth certificate is contained in the same section as the requirement for ordinary copies of the required consents.
 {¶ 21} We agree that parental consent to an adoption order is a jurisdictional prerequisite which, if absent, allows the order to be attacked as void in a habeas corpus proceeding. McGinty v.Jewish Children's Bureau (1989), 46 Ohio St.3d 159, 161. However, the consent requirement is a constitutional requirement designed to protect the legal rights a parent has with respect to his child. See In re Ramsey (1956), 164 Ohio St. 567, 571. The statutory requirements regarding the manner in which the petitioner must prove the consent are procedural rather than jurisdictional.
 {¶ 22} We note that R.C. 3107.05(B) requires a certified copy of the birth certificate "if available." Thus, at minimum, the court has jurisdiction to determine the availability of a certified copy of the birth certificate. Additionally, subsection (B) of R.C. 3107.05, unlike subsection (A), does not specify that the items it requires to be filed with the clerk shall beincluded in the petition commencing the action. Rather, subsection (B) does not specify a deadline, but merely states that the certified copy of the birth certificate "shall be filed with the clerk." Hence, the failure to attach any of the documents listed in R.C. 3107.05(B) would result in an error in the exercise of subject matter jurisdiction, rather than an absence of subject matter jurisdiction.
 {¶ 23} In addition, this court has held that a trial court had subject matter jurisdiction over an adoption proceeding even though the adoption petition did not strictly adhere to the requirements of R.C. 3107.05(A). In re Adoption of Howell
(1991), 77 Ohio App.3d 80. In Howell, we noted that the petitioner's omissions did not cause prejudice to any party, and that the best interests of the child would not be served by dismissing the action based on the omissions. Similarly, here we note that Reed's failure to file a certified copy of the birth certificate with his petition did not prejudice Chitwood. Reed filed a certified copy of the certificate after Chitwood objected. Additionally, we find that, while the better practice is to file a certified copy of the birth certificate with the petition for adoption, R.C. 3107.05 does not require the petitioner to include it in his initial filing. Therefore, we find that the trial court possessed subject matter jurisdiction over Reed's petition and properly exercised its jurisdiction.
 {¶ 24} Accordingly, we overrule Chitwood's third cross-assignment of error.
 III. {¶ 25} Reed asserts in his two assignments of error that the trial court erred in denying his petition and failing to find that Chitwood did not provide support and maintenance for Jacob for a period of one year prior to the filing of the petition or for one year during Jacob's placement in his home. Because Reed did not argue his assignments of error separately as required by App.R. 16(A), we address them together.
 {¶ 26} R.C. 3107.07 provides that the consent of the natural parent of a minor is not required for adoption if the court finds "that the parent has failed without justifiable cause to communicate with the minor or to provide for the maintenance and support of the minor as required by law or judicial decree for a period of at least one year immediately preceding either the filing of the adoption petition or the placement of the minor in the home of the petitioner." The petitioner bears the burden of proving failure to communicate and support. In re Adoption ofBovett (1987), 33 Ohio St.3d 102.
 {¶ 27} The relationship between a parent and child is a constitutionally protected liberty interest. See, In re Adoptionof Zschach (1996), 75 Ohio St.3d 648. Therefore, any exception to the parental consent requirement for adoption "must be strictly construed so as to protect the right of natural parents to raise and nurture their children." In re Adoption ofSchoeppner (1976), 46 Ohio St.2d 21, 24. The relevant inquiry is not whether the parent provided support as would be expected, "but whether the parent's failure to support * * * is of such magnitude as to be the equivalent of abandonment." Celestino v.Schneider (1992), 84 Ohio App.3d 192, 196. For such reason, Ohio courts have held even minimal contributions toward the support of a child meet the maintenance and support requirements of R.C.3107.07(A) and preserve the natural parent's consent as a jurisdictional prerequisite to a child's adoption. In ReAdoption of McNutt (1999), 134 Ohio App.3d 822; Gorski v.Myer, Stark App. No. 2005CA00033, 2005-Ohio-2604.
 {¶ 28} When reviewing a trial court's determination regarding whether a natural parent's consent is necessary for adoption, we cannot reject the trial court's finding unless the judgment is against the manifest weight of the evidence. Bovett at paragraph four of the syllabus; In re Adoption of Masa (1986),23 Ohio St.3d 163, paragraph two of the syllabus. A judgment is not against the manifest weight of the evidence if some competent, credible evidence in the record supports it. Shemo v.Mayfield Hts., 88 Ohio St.3d 7, 2000-Ohio-258; C.E. Morris Co.v. Foley Construction Co. (1978), 54 Ohio St.2d 279, syllabus. We defer to the trial court on such findings because the trial court, as the trier of fact, is in the best position to observe witnesses' demeanor, gestures and voice inflections, and to use those observations in weighing the credibility of the proffered testimony. Myers v. Garson, 66 Ohio St.3d 610, 615, 1993-Ohio-9; Seasons Coal Co. v. Cleveland (1984),10 Ohio St.3d 77, 80.
 {¶ 29} Reed contends that the trial court's judgment is against the manifest weight of the evidence because the evidence is undisputed that Chitwood did not make a child support payment between July 9, 2001 and July 18, 2002. Reed contends that Chitwood's failure to pay child support due to the Navy's error does not render the failure justifiable, because Chitwood could have written a personal check for child support as soon as he learned that the Navy had failed to withhold support from his wages.
 {¶ 30} While we agree that Chitwood cannot place all blame for his failure to make his child support payments on the Navy, we nonetheless find that some competent, credible evidence supports the trial court's judgment. Although the parties dispute whether Chitwood had Jacob for several weeks in July and August of 2001, the record contains the testimony of Chitwood, Newman, and Hicks that Chitwood did have Jacob during those times. Additionally, Chitwood introduced photographs into evidence that support his claim. The parties do not dispute that Hicks took Jacob to Chitwood's graduation from Navy boot camp, and do not dispute that Chitwood provided Jacob with a car seat, food, clothing and shelter during that visit. The record also contains photographic evidence that Jacob accompanied Chitwood to the airport when Chitwood left after his Christmas leave.
 {¶ 31} Moreover, while we do not excuse Chitwood's failure to pay child support, the record does contain some competent, credible evidence that his failure was justifiable. In particular, the record contains Chitwood's testimony that he believed his Navy recruitment officer, and later relied upon his Navy financial officers' representations, that the Navy would withhold his support payments. His lengthy deployments gave him little opportunity to learn of the error or inquire if the Navy had remedied the problem. Finally, the record contains no evidence that Chitwood failed to communicate with Jacob for a full year.
 {¶ 32} Based on this evidence, we find that the record contains some competent, credible evidence to support the trial court's judgment. Accordingly, we overrule Reed's assignments of error, find that it is not necessary to address Chitwood's remaining cross-assignments of error, and affirm the judgment of the trial court.
JUDGMENT AFFIRMED.
 JUDGMENT ENTRY
It is ordered that the JUDGMENT BE AFFIRMED and that Appellee recover of Appellant costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Scioto County Court of Common Pleas, Probate Division, to carry this judgment into execution.
Any stay previously granted by this Court is hereby terminated as of the date of this entry.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 for the Rules of Appellate Procedure. Exceptions.
Harsha, P.J.: Concurs in Judgment and Opinion.
Abele, J.: Concurs in Judgment Only.