[Cite as *Carlson v. Cincinnati*, 2020-Ohio-4685.]

# IN THE COURT OF APPEALS
## FIRST APPELLATE DISTRICT OF OHIO
## HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| RICK CARLSON, | : | APPEAL NO. C-190631<br>TRIAL NO. A-1703713 |
| Plaintiff-Appellant, | : | |
| vs. | : | *O P I N I O N.* |
| CITY OF CINCINNATI, OHIO, | : | |
| Defendant/Third-Party Plaintiff-Appellee, | : | |
| | : | |
| vs. | : | |
| | : | |
| TUSCAN HILLSIDE DEVELOPMENT LLC, | : | |
| DAISY CARLSON, | : | |
| NOAH CARLSON, | : | |
| and | : | |
| JEREMIAH CARLSON, | : | |
| Third-Party Defendants-Appellants. | : | |

Civil Appeal From: Hamilton County Court of Common Pleas

Judgment Appealed From Is: Affirmed in Part, Reversed in Part, and Cause Remanded

Date of Judgment Entry on Appeal: September 30, 2020

*Hilton Parker LLC*, *Jonathan L. Hilton* and *Geoffrey C. Parker*, for Plaintiff/Third-Party Defendants-Appellants,

*Paula Boggs Muething*, City Solicitor, *Erica Faaborg* and *David M. Lang*, Assistant City Solicitors, for Defendant-Appellee.



**WINKLER, Judge.**

{¶1}   Appellants Rick Carlson, Carlson's children, and Carlson's business entity appeal the judgment of the trial court ordering them to pay appellee the city of Cincinnati hundreds of thousands of dollars in unpaid property fines and fees. For the reasons that follow, we determine that the trial court erred in awarding the city $2,800 for an unpaid fee from July 2011, because the six-year statute of limitations had expired on the city's claim. We affirm the remainder of the trial court's judgment.

### Background and Procedural Posture

{¶2}   Rick Carlson filed the initial lawsuit in this matter in July 2017, seeking to stay the demolition of a vacant building on one of his properties in the Fairmount area. The city responded with numerous counterclaims against Carlson, as well as third-party claims against Carlson's business entity, Tuscan Hillside Development LLC, and Carlson's children, Daisy Carlson, Noah Carlson, and Jeremiah Carlson (collectively "the Carlson defendants"). The city alleged that the Carlson defendants owed hundreds of thousands of dollars in fines and fees related to more than 200 land parcels that they had purchased at public sales. The city alleged that the Carlson defendants had refused to maintain the properties in accordance with the city's municipal code, and that the city had issued numerous citations to the Carlson defendants, which remained unpaid.

{¶3}   The city filed a motion for partial summary judgment, requesting that the court grant judgment in the city's favor on its claims against the Carlson defendants for unpaid civil fines, costs incurred by the city in barricading, demolishing, and stabilizing numerous properties, nuisance-abatement costs, and outstanding water-service charges. The city also requested summary judgment on its

3

claim for unpaid Vacated Building Maintenance License ("VBML") fees. The city supported its motion with an affidavit from Edward Cunningham, the division manager for the city's Property Maintenance Code Enforcement Division. Cunningham averred that the Carlson defendants owned properties at 12 separate addresses, all which had been ordered vacated or kept vacant, and that the Carlson defendants had never applied for VBMLs. Cunningham averred that the Carlson defendants owed $137,800 in VBML fines and fees.

{¶4} The Carlson defendants replied to the city's motion for partial summary judgment and opposed the motion on several grounds. In relevant part, the Carlson defendants argued that the six-year statute of limitations had run as to the unpaid VBML fees for several of the properties, and that the city had not met its burden to calculate the amount of unpaid VBML fees and late fees.

{¶5} The city filed a reply in support of its partial-summary-judgment motion. In its reply, the city asserted that the Carlson defendants owed over $200,000 in unpaid VBML fees and fines, and that the amount averred by Cunningham contained a calculation error. The city attached a spreadsheet as an exhibit to its reply, "Exhibit H," which contained a detailed breakdown of the license fees due for each property.

{¶6} The Carlson defendants moved to file a surreply, or alternatively, to strike the city's reply brief. The Carlson defendants argued that the city's request for an increased amount of unpaid VBML fees in its reply essentially amounted to a new summary-judgment motion to which the Carlson defendants could not respond.

{¶7} The trial court overruled the Carlson defendants' motion to file a surreply and granted the city's motion for partial summary judgment. Subsequently, the city filed a notice of dismissal as to several claims. The trial court then entered

4

an order requiring all parties to establish which claims, if any, remained pending. The city and the Carlson defendants requested that the trial court formally dismiss any remaining claims. The trial court entered an order formally dismissing any remaining claims that had not been resolved, and this appeal by the Carlson defendants followed.

**The Record Shows the City's Judgment Against Carlson was Satisfied**

{¶8} Before this court addresses the merits of the trial court's summary-judgment decision, we must address a jurisdictional issue related to the city's filing of a satisfaction of judgment.

{¶9} After the trial court entered its decision granting partial summary judgment to the city, the city filed certificates of judgment. Approximately nine months later, an unsigned motion was filed on behalf of all "counterclaim defendants" requesting to deposit money in an escrow account to obtain a "lien release." The trial court denied the motion on several grounds. The city then filed a notice of satisfaction of judgment and release of lien as to Rick Carlson.

{¶10} Voluntary satisfaction of a judgment renders an appeal from that judgment moot. *Wiest v. Wiegele*, 170 Ohio App.3d 700, 2006-Ohio-5348, 868 N.E.2d 1040, ¶ 12 (1st Dist.), citing *Blodgett v. Blodgett*, 49 Ohio St.3d 243, 245, 551 N.E.2d 1249 (1990). "A judgment is voluntarily satisfied 'where the party fails to seek a stay prior to the satisfaction of [the] judgment.' " *Summit Servicing Agency, L.L.C. v. Hunt*, 9th Dist. Summit No. 28699, 2018-Ohio-2494, ¶ 13, quoting *CommuniCare Health Servs., Inc. v. Murvine*, 9th Dist. Summit No. 23557, 2007-Ohio-4651, ¶ 20.

{¶11} In *Wiest*, the winning party satisfied the judgment through garnishment, and the appellants did not seek a stay order and did not post a

supersedeas bond. This court determined that the appeal from that judgment was moot because "the case was over." *Wiest* at ¶ 14; *see Kevin O'Brien & Assocs. v. Baum*, 10th Dist. Franklin No. 03AP-1010, 2004-Ohio-2713, ¶ 8 ("Once an order has been satisfied, the reversal of that order generally affords no real relief.").

{**¶12**} Because Rick Carlson did not seek a stay of the judgment and did not post a bond, and the city then entered a satisfaction of judgment as to Rick Carlson, the record indicates that Rick Carlson's appeal is moot.

{**¶13**} Specifically, the second assignment of error pertains only to Rick Carlson in which he argues that the trial court erred by failing to reduce the ultimate judgment against him by $3,500. Although the city agrees that the trial court's entry contains what essentially amounts to a clerical error, and the judgment against Rick Carlson should be reduced by $3,500, this court has no jurisdiction to provide the requested relief. Thus, we overrule the second assignment of error as moot.

{**¶14**} Because the record does not indicate that the judgment was satisfied as to any of the other Carlson defendants besides Rick Carlson, we will address the merits of the appeal.

### Establishing VBML Damages

{**¶15**} In their first assignment of error, the Carlson defendants argue that the trial court erred in granting summary judgment based upon evidence that the city had presented for the first time in a reply brief and in the form of "an unsworn statement from a city attorney." The Carlson defendants take issue with the evidence put forth by the city as to the unpaid fees and fines that the Carlson defendants owed under the VBML program.

{**¶16**} According to the city, the city's VBML program targets vacated and blighted properties by imposing escalating fees on owners of properties that have

6

been ordered vacated or kept vacant for a one-year period or more. The fee owed by a property owner depends upon the length of time a building has been ordered vacated or kept vacant. For the first year, a property owner must pay an annual $900 fee, but during the second year, the fine doubles to $1,800. *See* Cincinnati Municipal Code 1101-129.1. For properties that have been ordered vacated or kept vacant for two to five years, a property owner must pay an annual VBML fee of $2,700. *Id.* The amount increases to $3,500 annually for properties that have been ordered vacated or kept vacant for at least five years. *Id.*

{¶17} In seeking to establish that the Carlson defendants owed substantial unpaid VBML fines and fees, the city relied on an affidavit from Edward Cunningham. Cunningham established that the Carlson defendants owned several properties subject to the VBML program, and that the Carlson defendants had never applied for VBMLs as required by the city municipal code.

{¶18} The Carlson defendants opposed the city's motion in part by arguing that the city had failed to prove how it reached the calculated amount of VBML fines and fees that the Carlson defendants allegedly owed. The city responded in its reply memorandum with Exhibit H, a multi-page spreadsheet containing a breakdown regarding each property, when the property had been ordered vacated or kept vacant, and how many years the Carlson defendants had been responsible for obtaining a VBML.

{¶19} The Carlson defendants do not dispute their responsibility to obtain VBMLs, nor do they dispute that they failed to obtain the VBMLs. Instead, the Carlson defendants argue that the total amount of damages in Exhibit H conflicts with the total amount of damages stated in Cunningham's affidavit, and that Exhibit

H contains new evidence that should not have been introduced for the first time in a reply memorandum.

{¶20} We disagree with the Carlson defendants' characterization and argument regarding the city's Exhibit H attached to its reply memorandum. Once the city established that the Carlson defendants owned the properties subject to the VBML program, the dates the properties were acquired, and that the Carlson defendants had failed to apply for the VBMLs, the trial court was capable of determining the fees owed by applying the VBML fee-structure contained in the municipal code. Therefore, the city's Exhibit H was not newly-introduced evidence, but a mathematical aid to the trial court.

{¶21} We overrule the first assignment of error.

### Statute of Limitations Expired as to Jeremiah's 2011 Unpaid VBML Fees

{¶22} The Carlson defendants' third assignment of error asserts that the trial court erred in holding that the city could recover a 2011 unpaid VBML fee from Jeremiah Carlson for the property at 2516 Liddell, because the statute of limitations had run prior to the filing of the city's third-party claim in August 2017.

{¶23} Both parties agree that the city's claim for unpaid VBML fees is governed by R.C. 2305.07, which provides "an action upon a contract not in writing, express or implied, or upon a liability created by statute other than a forfeiture or penalty, shall be brought within six years after the cause thereof accrued." R.C. 2305.07; *see City of Cincinnati v. Deutsche Bank Natl. Trust Co.*, S.D.Ohio No. 1:12-CV-104, 2016 WL 2897472, *11 (May 18, 2016). Subject to only narrow exceptions, a cause of action accrues at the time the wrongful act occurs. *Bd. of Edn. of Loveland City School Dist. v. Bd. of Trustees of Symmes Twp.*, 2018-Ohio-1731, 111 N.E.3d 833, ¶ 33 (1st Dist.). In order to determine if the six-year statute of limitation had

8

run prior to August 2017, we must first determine when the 2011 VBML fee became due.

{¶24} Cincinnati Municipal Code 1101-77.3 provides that a VBML must be renewed before or on the annual renewal date, and that "[t]he annual renewal date shall be the anniversary of the date notice of violation is given * * * wherein the building or portion thereof was initially ordered to be vacated or kept vacant." If the VBML is not timely renewed under Cincinnati Municipal Code 1101-77.3, then a late fee applies. *See* Cincinnati Municipal Code 1101-129.3.

{¶25} The city initially ordered 2516 Liddell vacated on July 27, 2010. Applying Cincinnati Municipal Code 1101-77.3, the annual renewal date for the VBML for 2516 Liddell was July 27, 2011. Coincidentally, Jeremiah acquired 2516 Liddell on July 27, 2011. Thus, Jeremiah Carlson was required to pay the VBML fee on the day he acquired the property, July 27, 2011, for the annual period covering July 27, 2011, to July 27, 2012. Because Jeremiah failed to apply for a renewal VBML prior to the annual renewal date, he was also required to pay a late fee the day after he missed the annual renewal deadline—or July 28, 2011. Therefore, the city's claim against Jeremiah Carlson under Cincinnati Municipal Code 1101-129.3 for the unpaid 2011 VBML fee accrued on July 27, 2011, and the city's claim for any unpaid VBML late fee accrued on the following day, July 28, 2011.

{¶26} The city argues that Jeremiah was required to pay the VBML renewal fee and any late fee "on each and every day from July 27, 2011." The city's argument belies the plain language of Cincinnati Municipal Code 1101-77.3, which provides that the VBML fee is due on the anniversary of the notice of violation date. Furthermore, Cincinnati Municipal Code 1101-129.3 provides that if a property owner fails to pay the VBML fee, renewal, or a related fine, "said amount shall

9

constitute a debt due and owing to the city, and the city may commence a civil action to collect such unpaid debt."

{¶27} Therefore, the city's claim against Jeremiah Carlson for the unpaid July 2011 $1,800 VBML license fee and $1,000 late fee were filed outside of the six-year statute of limitations.

{¶28} We sustain the third assignment of error.

**VBML Escalating Fee Structure**

{¶29} In their fourth assignment of error, the Carlson defendants argue that the trial court erred in applying the escalating VBML fee structure, as provided in Cincinnati Municipal Code 1101-129.

{¶30} Cincinnati Municipal Code 1101-129.1 provides:

The fee for application for a vacated building maintenance license is based on the duration of time the building has been ordered vacated or kept vacated as determined by the following scale:

•$900 for properties that have been ordered vacated or kept vacant for less than one year;

•$1,800 for properties that have been ordered vacated or kept vacant for at least one year but less than two years;

•$2,700 annually for properties that have been ordered vacated or kept vacant for at least two years but less than five years;

•$3,500 annually for properties that have been ordered vacated or kept vacant for at least five years.

The fee shall be paid at the time of application and deposited in the building hazard abatement fund. Such rates shall go into effect upon the effective date of the ordinance which implements the fee structure

contained in this section. **Upon any initial application for a license, or upon the first renewal of a license following the implementation of the above-listed fee structure, all persons shall initially be required to pay the $900 fee, and will thereafter pay the designated annual fee based on the graduated rate listed herein.**

(Emphasis added.)

{¶31} The Carlson defendants argue that under the bolded portion of Cincinnati Municipal Code 1101-129.1 above, they were required to pay a $900 VBML fee for the first year of their property ownership, regardless of how long the property had been ordered vacated or kept vacant.

{¶32} As an initial matter, the city argues that the Carlson defendants waived their argument regarding the amount of fees due under Cincinnati Municipal Code 1101-129.1, by failing to raise the argument in their initial response to the city's partial-summary-judgment motion. The record shows that the Carlson defendants raised the argument in a motion for reconsideration filed after the trial court's initial ruling on the city's partial-summary-judgment motion, but prior to the entry of final judgment. The trial court considered the Carlson defendants' argument regarding the escalating VBML fee structure and rejected it.

{¶33} Except for claims of plain error, the failure to raise an issue at the trial-court level acts as a waiver of the issue on appeal. *Deutsche Bank Natl. Trust Co. v. Sopp*, 2016-Ohio-1402, 62 N.E.3d 863, ¶ 8 (10th Dist.). Some courts have held that a party waives an argument on appeal by first raising the argument at the trial-court level in a motion for reconsideration. *Terry v. Hancock-Wood Elec. Coop., Inc.*, 6th Dist. Erie No. E-08-060, 2009-Ohio-4925, ¶ 26, citing *Shalkhauser v. Medina*, 148

11

Ohio App.3d 41, 2002-Ohio-222, 772 N.E.2d 129, ¶ 11 (9th Dist). The rationale behind this rule is that a motion for reconsideration filed after final judgment is a nullity. *Shalkhauser* at ¶ 11, citing *Pitts v. Dept. of Transp.*, 67 Ohio St.2d 378, 379, 423 N.E.2d 1105 (1981).

{¶34} Here, the Carlson defendants raised their argument regarding Cincinnati Municipal Code 1101-129.1 in a motion for reconsideration filed prior to the entry of final judgment. Motions for reconsideration filed prior to final judgment are permissible. *Pitts* at 380. This principle is consistent with the general rule that a trial court has continuing jurisdiction to reconsider its interlocutory rulings prior to entering final judgment. *Jackson v. Jackson*, 1st Dist. Hamilton No. C-190383, 2020-Ohio-3517, ¶ 7. Therefore, we determine that the Carlson defendants did not waive their argument regarding Cincinnati Municipal Code 1101-129.1 for purposes of appeal.

{¶35} Turning to the merits of the Carlson defendants' assignment of error, we do not agree with the Carlson defendants' argument that they were only required to pay a $900 VBML fee for the first year of their property ownership, regardless of the length of time the property had been ordered vacated or kept vacant.

{¶36} Under the plain language of Cincinnati Municipal Code 1101-129.1, the amount of the VBML fee depends upon the length of time a particular property has been ordered vacated or kept vacant, without regard to the length of time a particular owner has owned the property. The last sentence of Cincinnati Municipal Code 1101-129.1 permits a $900 VBML fee for "any initial application for a license, or upon the first renewal of a license following the implementation of the above-listed fee structure[.]" Thereafter, property owners "pay the designated annual fee based on the graduated rate listed herein." Cincinnati Municipal Code 1101-129.1. In other

words, upon the adoption and implementation of Cincinnati Municipal Code 1101-129.1, all property owners had a one-time opportunity to pay the lowest fee amount of $900 for a VBML application or renewal application. After the first year following the implementation of the ordinance, however, the graduated-fee structure applied.

{¶37} Therefore, we reject the Carlson defendants' argument that the $900 VBML fee applied for the first year of their property ownership, regardless of how many years had passed since the properties were ordered vacated or kept vacant.

{¶38} We overrule the fourth assignment of error.

### Conclusion

{¶39} In conclusion, we reverse the trial court's judgment requiring Jeremiah Carlson to pay $2,800 for a July 2011 VBML fee and late fee, because the statute of limitations had expired by the time the city filed its claim. The remainder of the trial court's judgment is affirmed. We remand the case to the trial court to enter judgment consistent with this opinion.

Judgment affirmed in part, reversed in part, and cause remanded.

**MOCK, P.J.,** and **ZAYAS, J.,** concur.

Please note:
    The court has recorded its own entry this date.