**[Cite as *Carlson v. Cincinnati*, 2024-Ohio-591.]**

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO


| | | |
|---|---|---|
| RICK CARLSON, | : | APPEAL NO. C-230115 |
| | | TRIAL NO. A-1703713 |
| Plaintiff-Appellant, | : | |
| vs. | : | *O P I N I O N.* |
| CITY OF CINCINNATI, | : | |
| Defendant-Appellee. | : | |


Civil Appeal From: Hamilton County Court of Common Pleas

Judgments Appealed From Are: Affirmed in Part, Reversed in Part, and Cause Remanded

Date of Judgment Entry on Appeal: February 16, 2024

*Hilton Parker LLC* and *Jonathan L. Hilton* for appellant,

*Emily Smart Woerner*, City Solicitor, and *David M. Laing*, Assistant City Solicitor, for appellee.

**WINKLER, Judge.**

{¶1}     Appellant Rick Carlson ("Rick") appeals the trial court's grant of the city's postjudgment Civ.R. 60(B) motion reinstating a 2019 judgment against him after he was mistakenly deemed to have voluntarily satisfied the judgment.  Rick also appeals the merits of the trial court's partial-summary-judgment order, which found him liable for vacant building maintenance license fees and nuisance-abatement costs, as well as the trial court's denial of Rick's motion for reconsideration of that order.  For the following reasons, we affirm the trial court's order reinstating the judgment against Rick, affirm in part and reverse in part the trial court's grant of partial summary judgment, and affirm the trial court's denial of the motion for reconsideration.  Accordingly, we remand the cause for further proceedings.

## Background

{¶2}     This appeal concerns long-running litigation between the city of Cincinnati and Rick, his children, and their family business entity seeking civil penalties, fees, and costs arising from a panoply of vacant and condemned properties they own.  This appeal is the third time that the *Carlson* litigation has come before this court.  *See Carlson v. City of Cincinnati*, 1st Dist. Hamilton No. C-190631, 2020-Ohio-4685 ("*Carlson I*"); *Carlson v. City of Cincinnati*, 1st Dist. Hamilton No. C-210238, 2022-Ohio-1513 ("*Carlson II*").  While *Carlson I* and *Carlson II* have involved Rick's children and their business entity, this appeal concerns only Rick.

### I.  Proceedings preceding the motion for partial summary judgment.

{¶3}     In July 2017, Rick began this civil action by filing suit pro se to enjoin the city's demolition of a vacant building on one of his properties.  The city brought counterclaims against Rick and third-party claims against Rick's business entity,

Tuscan Hillside Development LLC, and Rick's children, Daisy, Noah, and Jeremiah Carlson (collectively, "the Carlson defendants"). *See Carlson I* at ¶ 2. The city alleged that the Carlson defendants owned some 200 properties and owed hundreds of thousands of dollars in unpaid civil fines, building-code citations, nuisance-abatement costs, and Vacated Building Maintenance License ("VBML") fees related to those properties. In 2017, Rick made a $3,500 voluntary payment for one year's VBML for one of his properties.

{¶4} The VBML fees comprise most of the city's eventual judgment against Rick. The VBML program targets vacated and blighted properties by imposing escalating fees on owners of properties that have been ordered vacated or kept vacant for one year or more. *See* Cincinnati Municipal Code 1101-129 et seq.; *Carlson II* at ¶ 16. VBML fees and penalties are set by ordinance. For the first year a property is ordered vacated or kept vacant, a property owner must pay an annual $900 fee. Cincinnati Municipal Code 1101-129.1. The fee increases to $1,800 for the second year, $2,700 annually for the third through fifth years, and $3,500 annually for each year thereafter. *Id.* There is a late-payment penalty equal to the lesser of $1,000 or the applicable annual fee if a person fails to timely obtain or renew a VBML. *Id.* at 1101-129.3.

{¶5} The city supported its counterclaim for VBML fees and penalties with Exhibit D, a spreadsheet that broke down the properties owned by each defendant and detailing the VBML fees alleged to be owed and the date each property was ordered vacated or kept vacant. Exhibit D alleged that Rick owed $77,900 in VBML fees on six properties he owned: $10,400 for 1752 Fairmount Avenue, $4,600 for 1536 Knox Street, $13,800 for 1538 Knox Street, $10,400 for 1861 Knox Street, $18,400 for 1862

Knox Street, and $20,300 for 2457 Waveland Place. Exhibit D lists a seventh property Rick owned, 1549 Fairmount Avenue, and that there was a 2007 order associated with that property, but Exhibit D does not list the date that property was vacated or an amount of VBML fees owed on that property.

## II. The motion for partial summary judgment.

{¶6} The city moved for partial summary judgment against the Carlson defendants on the civil fines, nuisance-abatement costs, and the VBML fees. The city attached to the motion an affidavit[1] from the division manager of the city's Property Maintenance and Code Enforcement Division, the office that enforces the VBML program, who averred that the Carlson defendants owned properties at 12 separate addresses, that those addresses were subject to the VBML program, and the Carlson defendants owed $137,800 in VBML fees and late-payment penalties. *Carlson I*, 1st Dist. Hamilton No. C-190631, 2020-Ohio-4685, at ¶ 3.

{¶7} The Carlson defendants opposed the city's motion by arguing, among other things, that the city failed to prove how it calculated the amount of VBML fees and penalties allegedly owed. In its reply memorandum, the city attached Exhibit H, another spreadsheet that broke down each property, the date it had been ordered vacant or kept vacant, the fee for each year that property required a VBML, and calculated the total VBML fees owed to date. Exhibit H calculated Rick owed $113,100 in VBML fees and penalties and that the Carlson defendants collectively owed $210,100 in total VBML fees and penalties.

---

[1] This affidavit is also labeled "Exhibit D," the same label as the spreadsheet detailing the VBML fees. To avoid confusion, we refer to only the spreadsheet attached to the counterclaim by name as Exhibit D and we refer to the affidavit by description.

{¶8} The Carlson defendants moved to file a surreply, or alternatively, to strike the city's reply brief. The Carlson defendants argued that Exhibit H constituted new evidence and the city's request for an increased amount of unpaid VBML fees in its reply essentially amounted to a new summary-judgment motion to which the Carlson defendants could not respond. The trial court overruled the Carlson defendants' motion to file a surreply.

{¶9} The trial court granted partial summary judgment to the city that included an individual judgment against Rick, as well as individual money judgments against the other Carlson defendants. After the trial court entered its decision, the city, following the procedure of R.C. 2329.02, obtained five certificates of judgment and created liens on the Carlson defendants' real estate to secure the judgments.

{¶10} Before the trial court issued final judgment on all issues, Rick submitted a pro se filing asking the trial court to reconsider its partial-summary-judgment decision. In that filing, Rick raised several arguments that had not been brought when litigating the summary-judgment motion with counsel, including an argument that two properties at issue, 1536 Knox Street and 1538 Knox Street, constituted one "building" for the purposes of the VBML but with two addresses. The trial court struck the pro se filing as improper hybrid representation, and Rick's counsel later submitted a new motion for reconsideration, raising the same arguments. The trial court rejected Rick's arguments and denied reconsideration of the summary-judgment order.

{¶11} Months later, the city settled with Rick's daughter Daisy Carlson. The city filed an entry of satisfaction under the original case number intending to give notice that Daisy had satisfied the judgment, and the city requested the clerk release

the lien of the judgment recorded. However, the entry of satisfaction read "the judgment against the Petitioner-Counterdefendant *Rick* Carlson is satisfied." (Emphasis added.) The certificate of service attached to the entry of satisfaction also referred to Rick and counsel for the Carlson defendants and did not name Daisy Carlson. This error was not noticed at the time.

### III. The appeal in Carlson I.

{¶12} About one month later, on October 23, 2019, after the dismissal of all remaining claims, including Rick's, the trial court entered a final judgment. The Carlson defendants jointly appealed that final judgment. The record of the separate certificate of judgment docket was not certified to this court.

{¶13} The Carlson defendants argued on appeal in *Carlson I*, among other things, that Exhibit H was additional evidence that should not have been included in a reply memorandum. During oral argument, this court asked counsel for the parties why Rick's appeal was not moot when the record contained an entry of satisfaction with respect to his obligation. Counsel for the city and the Carlson defendants each appeared confused and indicated their belief that Daisy, not Rick, had satisfied the judgment and obtained a lien release. No party sought leave to correct the appellate record. *See* Civ.R. 60(A).

{¶14} This court dismissed Rick's appeal as moot and reached the merits of the appeals brought by the other Carlson defendants. This court held, among other things, that Exhibit H was not independent evidence but was a mathematical aid that summarized the evidence contained in Exhibit D attached to the counterclaim and applied the VBML fee structure to the present. *Carlson I*, 1st Dist. Hamilton No. C-190631, 2020-Ohio-4685, at ¶ 20.

#### IV. The city's attempts to correct the entry of voluntary satisfaction and the appeal in Carlson II.

{¶15}    The city first attempted to correct the erroneous entry of voluntary satisfaction after this court issued its decision in *Carlson I*.  The city filed an amended entry of satisfaction with an explanatory affidavit with the trial court under Civ.R. 60(A).  The trial court rejected the attempt, ruling that the law-of-the-case doctrine and *Carlson I* required treating the judgment against Rick as satisfied.  The city appealed that decision to this court.  *Carlson II*, 1st Dist. Hamilton No. C-210238, 2022-Ohio-1513, at ¶ 29.

{¶16}    In *Carlson II*, this court held that the explanatory affidavit was new evidence, and thus the law-of-the-case doctrine did not apply.  *Id.* at ¶ 18-19.  We further held that because the entry of satisfaction had become "inextricably intertwined" with the trial court's final judgment, the city could not modify the judgment under Civ.R. 60(A) but must seek relief under Civ.R. 60(B).  *Id.* at ¶ 29, citing *In re Dabbelt*, 3d Dist. Mercer No. 10-84-6, 1986 Ohio App. LEXIS 6663 (May 1, 1986).  We interpreted the city's actions as invoking Civ.R. 60(B) and remanded the cause to the trial court with instructions to decide two issues: (1) whether the city's motion was made within a reasonable time and (2) whether the final judgment, as modified by the erroneous entry of satisfaction, should be amended to correct an unjust result.  *Id.* at ¶ 33.

#### V. Proceedings to correct the judgment after Carlson II.

{¶17}    Following our instructions, the trial court analyzed the motion under Civ.R. 60(B).  The trial court determined that the motion was made within a reasonable time because the city learned of the mistake during oral argument in

7

*Carlson I* and filed the amended entry of satisfaction within two days of the *Carlson I* decision and less than one month from oral argument. The trial court further determined that the judgment ought to be amended to correct an unjust result as all parties conceded the mistake and to not correct the error would have provided Rick a six-figure windfall and required Daisy to pay her judgment twice. Consequently, the trial court granted the city's motion and reinstated the judgment against Rick.

{¶18} Rick now appeals the order reinstating the judgment and the trial court's 2019 grant of partial summary judgment against him.

## Law and Analysis

{¶19} Rick raises five assignments of error for review. First, Rick argues the trial court improperly granted the city's Civ.R. 60(B) motion to reinstate the judgment against Rick when the trial court found only that the city had acted with neglect, without finding that the neglect was excusable. Second, Rick argues the trial court erred by failing to reduce the judgment against Rick by $3,500 to credit a voluntary payment he made. Third, Rick argues the trial court committed plain error by granting summary judgment to the city against Rick for $1,190.50 for nuisance-abatement costs, when the parties agree that those costs were beyond the applicable statute of limitations. Fourth, Rick argues the trial court improperly granted partial summary judgment on the city's VBML claims when the city introduced no evidence into the record of when Rick's buildings became vacant and subject to the VBML fee structure. Fifth, Rick argues the trial court improperly weighed the evidence as to whether the two properties were part of the same "building" and should have been subject to one fee when deciding Rick's motion to reconsider the grant of partial summary judgment

on the VBML fees for the 1536 Knox Street and 1538 Knox Street properties, rather than holding that Rick had created a triable issue of fact.

### I. The Civ.R. 60(B)(1) motion to reinstate the judgment.

{¶20} In his first assignment of error, Rick argues the trial court erred by granting the city's Civ.R. 60(B)(1) motion without making an express finding that the city's neglect was excusable. We review the trial court's decision on a Civ.R. 60(B) motion under an abuse-of-discretion standard. *Wottreng v. CBTM Elberon, LLC*, 1st Dist. Hamilton No. C-220357, 2023-Ohio-2207, ¶ 7. An "abuse of discretion" implies the trial court's attitude is "unreasonable, arbitrary, or unconscionable." *Setters v. Durrani*, 1st Dist. Hamilton Nos. C-210428 and C-210437, 2022-Ohio-1022, ¶ 25. The trial court's determination will not be disturbed absent an exercise of unwarranted discretion or legal error. *Wottreng* at ¶ 7.

{¶21} Rick argues that the trial court erred by failing to expressly find the city acted with excusable neglect. However, a trial court is not required to issue findings of fact and conclusions of law on a Civ.R. 60(B) motion, particularly where a party did not request such findings or conclusions under Civ.R. 52. *Custom Pro Logistics, LLC v. Penn Logistics, LLC*, 1st Dist. Hamilton No. C-210422, 2022-Ohio-1774, ¶ 22, quoting *CitiMortgage, Inc. v. Dudek*, 9th Dist. Summit No. 25806, 2012-Ohio-899, ¶ 10, quoting *Home S. & L. Co. v. Avery Place, LLC*, 5th Dist. Delaware No. 11 CAE 02 0014, 2011-Ohio-4525, ¶ 29. Rick did not make such a request. Thus, the trial court was under no obligation to make an express finding of excusable neglect or any express findings of fact. A trial court does not abuse its discretion when it does not do something it was under no obligation to do. Rick had a mechanism available in Civ.R. 52 to request that the trial court make the express finding he desired, but chose not to.

**{¶22}** Even had Rick requested the court make such a conclusion, it is not logically necessary for the trial court here to find excusable neglect to provide the relief sought by the city under Civ.R. 60(B)(1). Civ.R. 60(B)(1) provides that "[o]n motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order or proceeding for the following reasons: (1) mistake, inadvertence, surprise, *or* excusable neglect." (Emphasis added.) The rule's use of the disjunctive when listing the grounds for relief means that any one of the available grounds may be sufficient. The city's motion did not state the specific grounds sought for relief under Civ.R. 60(B)(1) as it was originally made under Civ.R. 60(A) and this court later recharacterized it as a Civ.R. 60(B)(1) motion. *See Carlson II*, 1st Dist. Hamilton No. C-210238, 2022-Ohio-1513, at ¶ 32.

**{¶23}** There is no reason to conclude that the trial court necessarily decided the motion on excusable neglect as opposed to mistake. The trial court was instructed to determine whether the motion was made within a reasonable time and whether the judgment should be amended to correct an unjust result. *Id.* at ¶ 33. These determinations are consistent with any form of relief available under Civ.R. 60(B)(1). The trial court addressed both issues through the lens of a mistake.

**{¶24}** Rick argues even if the trial court granted the motion on grounds of a mistake, a mistake still requires that a party show it was justified in failing to avoid the mistake. While a party alleging a *unilateral mistake* on the part of one party or her counsel must show why they were justified in failing to avoid the mistake, the situation is different for a mutual mistake. *See Breckenridge v. Breckenridge*, 11th Dist. Geauga No. 2003-G-2533, 2004-Ohio-1845, ¶ 11, 13. A trial court is not expressly required to

find a justification to grant relief for a mutual mistake shared by both parties as to a material fact of the case. *See id.* at ¶ 11.

{¶25} Here, there was a mutual mistake as to who satisfied their judgment. All parties agree that there was a mistake in the entry of voluntary satisfaction, that Daisy Carlson, not Rick, satisfied the judgment against her, that the entry of voluntary satisfaction was intended to effect a release of Daisy, not Rick, and that the parties entered into a settlement agreement to resolve the judgment against Daisy. The parties did not realize the mistake until oral argument in *Carlson I*. This mistake also results in Rick avoiding the judgment against him while Daisy must pay her judgment twice to be released. The trial court did not abuse its discretion in correcting this mutual mistake by the parties.

{¶26} Consequently, we overrule Rick's first assignment of error.

## II. Accounting for voluntary payments and amounts barred by the statute of limitations.

{¶27} In his second and third assignments of error, Rick argues that the trial court erred when it did not reduce the judgment against him by $4,690.50 to credit a $3,500 voluntary payment made by Rick and to account for $1,190.50 in nuisance-abatement costs that were barred by the statute of limitations.

{¶28} The city concedes that Rick should be credited for the voluntary payment and that the nuisance-abatement costs are barred by the applicable statute of limitations. However, the city argues that the issues are not ripe for appellate review because the notice of appeal was filed before the city could file a corrected judgment amount. Thus, the city argues, both issues are not ripe because they are contingent on future events.

{¶29} "In order to be justiciable, a controversy must be ripe for review." *Keller v. Columbus*, 100 Ohio St.3d 192, 2003-Ohio-5599, 797 N.E.2d 964, ¶ 26. An issue is not ripe for appellate review if it rests on contingent future events that may not occur as anticipated or may never occur at all. *JPMCC 2004-CIBC10 7th St. Office, LLC v. URS Tower, LLC*, 2013-Ohio-796, 987 N.E.2d 348, ¶ 19 (1st Dist.), quoting *State v. Loving*, 180 Ohio App.3d 424, 2009-Ohio-15, 905 N.E.2d 1234, ¶ 4 (10th Dist.), citing *Texas v. United States*, 523 U.S. 296, 300, 118 S.Ct. 1257, 140 L.Ed.2d 406 (1998). While the city could file a corrected judgment to moot these issues in the future, that possibility does not render existing issues about the judgment not ripe for review. At this point in time, there is a judgment against Rick secured by liens against his real property. Rick argues that judgment does not account for his voluntary payments and contains amounts for claims that are barred by the statute of limitations. The city agrees with Rick's arguments. Thus, the judgment and its associated liens have live legal issues that can be resolved by judicial action.

{¶30} Though those issues could be rendered moot in the future, they are ripe for appellate review. The parties agree that Rick is entitled to credit for his $3,500 voluntary payment and that $1,190.50 of nuisance-abatement claims are barred by the applicable statute of limitations. The judgment should be corrected to reflect those amounts.

{¶31} Accordingly, we sustain the second and third assignments of error.

### III. Partial summary judgment on the VMBL fees and penalties.

{¶32} In his fourth assignment of error, Rick argues that the trial court erred in granting partial summary judgment against him on the VBML claims because there was no evidence of the dates when Rick's buildings became vacant and thus requiring

a VBML. Without evidence of those dates, the trial court could not have applied the VBML's fee structure to mathematically determine the amount of VBML fees owed.

**{¶33}** We review a trial court's grant of summary judgment de novo. *Helton v. Fifth Third Bank*, 1st Dist. Hamilton No. C-210451, 2022-Ohio-1023, ¶ 12. The trial court appropriately grants summary judgment "when there exists no genuine issue of material fact, the party moving for summary judgment is entitled to judgment as a matter of law, and the evidence, when viewed in favor of the nonmoving party, permits only one reasonable conclusion that is adverse to that party." *Id.*, citing *State ex rel. Howard v. Ferreri*, 70 Ohio St.3d 587, 589, 639 N.E.2d 1189 (1994).

**{¶34}** As an initial matter, our decision in *Carlson I* does not preclude Rick from appealing the merits of the summary-judgment order against him, despite the fact that *Carlson I* addressed the merits of that order. When a court holds that it lacks jurisdiction, its decision does not have any preclusive effect on the merits of a claim. *State ex rel. Schneider v. Bd. of Edn.*, 39 Ohio St.3d 281, 283, 530 N.E.2d 206 (1988). In *Carlson I*, we held the erroneous entry of satisfaction mooted Rick's appeal and thus we had no jurisdiction to entertain Rick's arguments. *Carlson I*, 1st Dist. Hamilton No. C-190631, 2020-Ohio-4685, at ¶ 13. Thus, *Carlson I* does not preclude Rick's appeal.

**{¶35}** However, that is not to say *Carlson I* is inapplicable. Both cases involve evidentiary challenges to the same partial-summary-judgment order. In *Carlson I*, we held that summary judgment was proper for the other Carlson defendants where:

> [o]nce the city established that the Carlson defendants owned the properties subject to the VBML program, the dates the properties were acquired, and that the Carlson defendants had failed to apply for the

13

VBMLs, the trial court was capable of determining the fees owed by
applying the VBML fee-structure contained in the municipal code.

*Id.* at ¶ 20. Rick argues that the trial court could not have granted summary judgment because there was no evidence of the dates that Rick's properties became vacant. However, Exhibit D, attached to the city's original counterclaim and evidence on summary judgment, lists the date that the 1861 Knox Street, 1752 Fairmount Avenue, 1862 Knox Street, 1538 Knox Street, 1536 Knox Street, and 2457 Waveland Place properties were subject to the VBML under the "original vacant date column." Those dates are repeated in Exhibit H as the date each property was subject to VBML requirements. Thus, Exhibit D provided evidence to the trial court of the dates that VBML fees began to accrue, and the trial court could apply the VBML fee structure contained in the municipal code. Consequently, summary judgment was proper for those properties.

{¶36} However, summary judgment was not proper regarding the 1549 Fairmount Avenue property. Exhibit D leaves the "original vacant date" and "amount" owed for 1549 Fairmount Avenue blank. Only Exhibit H stated that 1549 Fairmount Avenue was subject to VBML requirements on December 23, 2008, and calculated $25,400 in VBML fees and late penalties. But Exhibit H is not evidence, only a mathematical aid. *Carlson I* at ¶ 20. As such, Exhibit H alone is not evidence of the date that the 1549 Fairmount Avenue property was subject to the VBML requirements. Without evidence of that date, the trial court could not use the formula to calculate the fees owed on that property. Consequently, the trial court improperly relied on Exhibit H as evidence in awarding partial summary judgment for 1549 Fairmount Avenue. However, the trial court relied on Exhibit H only as a

14

mathematical aid and properly awarded summary judgment for all of Rick's other properties.

{¶37} Consequently, we sustain the fourth assignment of error regarding 1549 Fairmount Avenue only and we overrule the fourth assignment of error regarding 1861 Knox Street, 1752 Fairmount Avenue, 1862 Knox Street, 1538 Knox Street, 1536 Knox Street, and 2457 Waveland Place.

### IV. Denial of the motion for reconsideration.

{¶38} In his fifth assignment of error, Rick argues that the trial court improperly weighed the evidence when denying his motion for reconsideration of the grant of partial summary judgment. Although Rick was the nonmoving party for summary judgment, he was the moving party for reconsideration. Rick contends he raised a genuine issue of material fact by suggesting two of his properties, 1536 Knox Street and 1538 Knox Street, were one building with two addresses and thus subject to one VBML and not two separate buildings subject to two separate VBMLs.

{¶39} We review a trial court's ruling on a motion for reconsideration under an abuse-of-discretion standard because the trial court enjoys "plenary power" to rule on such a motion. *Mindlin v. Zell*, 10th Dist. Franklin No. 11AP-983, 2012-Ohio-3543, ¶ 23, citing *Groza-Vance v. Vance*, 162 Ohio App.3d 510, 2005-Ohio-3815, 834 N.E.2d 15, ¶ 53 (10th Dist.). Civ.R. 54(B) provides that a nonfinal order that disposes of fewer than all claims or parties or without an express determination that there is no just reason for delay may be "subject to revision at any time" before the entry of a final judgment. But Civ.R. 54(B) does not provide guidelines for when a trial court should grant a motion for reconsideration of a nonfinal order. Other appellate districts suggest reconsideration of a nonfinal order ought to be subject to the "apparent

justice" standard and "guided by Civ.R. 60(B) standards, albeit applied less rigorously." *Groza-Vance* at ¶ 53, quoting *Baker v. Schuler*, 2d Dist. Clark No. 02CA0020, 2002-Ohio-5386, ¶ 22, citing Klein and Darling, *Baldwin's Ohio Practice, Civil Practice*, Section AT 54-3 (1997 Ed.); *Seniah Corp. v. Buckingham, Doolittle & Burroughs, LLP*, 5th Dist. Stark No. 2016CA00039, 2016-Ohio-7516, ¶ 23, quoting *Mindlin v. Zell*, 10th Dist. Franklin No. 11AP-983, 2012-Ohio-3543, ¶ 23.

{¶40} A review of the record shows the 1536 Knox Street and 1538 Knox Street properties have been treated separately throughout the litigation by both Rick and the city prior to Rick's motion for reconsideration. The two properties were addressed separately in the city's original counterclaim, where the city alleged they share a common wall but are subject to separate VBMLs. The two properties were listed separately in Exhibit D attached to the counterclaim and in Exhibit H attached to the reply in support of summary judgment. In his answer, Rick admitted the properties share a common wall, but did not address whether the two properties were the same "building" for the purposes of the VBML in either his answer or on summary judgment. Rick did argue that the statute of limitations barred the VBML claim for 1536 Knox Street, that VBML fees were calculated incorrectly for 1538 Knox Street, and that both properties did not have running water and thus could not be billed for water. Thus, Rick was aware of the issue when it first arose in the city's counterclaim, but chose not to raise it either in his answer or on summary judgment.

{¶41} Rick first raised the argument that the 1536 Knox Street and 1538 Knox Street properties were one building with two addresses and thus were subject to just one VBML instead of two separate VBMLs for the first time in a pro se filing for reconsideration submitted after fully litigating the partial-summary-judgment motion

with counsel. After the trial court correctly dismissed the pro se filing as an improper hybrid representation, Rick's counsel submitted a motion for reconsideration where the argument first properly appeared before the trial court.

{¶42} Rick offered two pieces of evidence in support of his argument on reconsideration. First, he offered a historical Google Street View picture of the two addresses prior to their demolition that depict two single-story Italianate "shotgun" rowhouses.[2] The photo is black-and-white and depicts two different colored façades with slightly different stonework patterns. Each façade has its own window, raised door, and stairs leading up from the street. The façades adjoin each other on one wall, separated with a vertical line that appears to be mortar. One of the façades has another partial adjoining wall with a third building next to it.

{¶43} Second, Rick offered records from the Hamilton County Auditor's Office depicting the lots for Knox Street and the outlines of the structures constructed on them to allege the two buildings had the same foundation prior to being demolished. However, the two property lots are bisected by a black line that is the exact same line that marks the border of the foundation. In response, the city offered the Hamilton County Auditor's property ownership records that demonstrated the addresses had two separate histories of ownership and were transferred independently of each other.

---

[2] Italianate style rowhouses are square or rectangular buildings with a distinctive bracketed cornice along the top of the façade and are common in Cincinnati. *See* City of Cincinnati, *Italianate: 1865 To 1890*, https://www.cincinnati-oh.gov/buildings/historic-conservation-old/major-architectural-styles/italianate-1865-to-1890/ (accessed Jan. 8, 2024). A "shotgun" rowhouse is a single-story building one room wide with other rooms lined up behind it, creating a straight "shot" from the front to the rear of the house.

{¶44} Faced with the arguments of the parties on the motion for reconsideration, we hold the trial court did not abuse its discretion by concluding that 1536 Knox Street and 1538 Knox Street were two buildings subject to separate VBMLs.

{¶45} Accordingly, we overrule the fifth assignment of error.

## Conclusion

{¶46} In sum, we overrule the first and fifth assignments of error and affirm the trial court's order reinstating the judgment against Rick and the trial court's denial of Rick's motion for reconsideration respectively. We sustain the fourth assignment of error in part and overrule it in part and reverse the trial court's grant of partial summary judgment regarding 1549 Fairmount Avenue but affirm the grant of summary judgment regarding Rick's other properties. We sustain the second and third assignments of error and remand this cause to the trial court with instructions to correct the judgment to credit Rick's voluntary payment and remove any amounts barred by the statute of limitations.

Judgment accordingly.

CROUSE, P.J., and BERGERON, J., concur.

Please note:
    The court has recorded its entry on the date of the release of this opinion.